LOUIS F. LEOPOLD *et al.*

*v.*

SAMUEL SALKEY.

1. CONTRACT—*failure that authorizes rescission by other party.* Where a party agrees in writing to serve another for three years as superintendent and manager in his business as a manufacturer and dealer in clothing, in which he covenants to devote himself entirely to the business, giving his whole time, attention and skill thereto, for which he is to receive $3,000 per annum, in monthly payments of $250, each of his covenants goes to the entire consideration, and the covenant of the employer to pay is not for a part, but for the whole of the term, and a failure on the part of the

person employed to render the services agreed, for about two weeks during the busiest and most important part of the season, though without fault on his part, as, when he is arrested and imprisoned, is a substantial breach of his covenant, and will authorize the employer to treat the contract as abandoned, and employ another person in his place; and in such case the person so originally employed, when he has been paid for the services actually performed, can not maintain an action on the contract for not being allowed to resume his position, after his discharge, and complete the contract.

2.  SAME—*right to recover without performance.*  Where a person employed for a term of service seeks to recover on the contract without full performance, on the ground that his employer refused to allow him to serve out his time, he must aver and prove his ability, readiness and an offer to perform on his part, as to the subsequent time, or he can not recover beyond the service actually rendered.

3.  It is a good defense to an action on a covenant or contract, that the obligation to perform the act required was dependent on some other which the other party was to do, and has failed to do; and the defense is good, although the omission of the other party to do the thing required of him was produced by causes which he could neither foresee nor control.

4.  There is a class of cases where a party contracting to render personal service, after part performance becomes disabled by inevitable casualty and is thereby prevented from completing his contract, has been held entitled to recover for the services actually rendered, upon a *quantum meruit;* but they furnish no warrant for holding that the laborer in such case can recover upon the contract for a failure to pay for future services he has been prevented from performing.

5.  SAME—*when party may abandon.*  Where the failure to perform a contract is in respect to matters which would render the performance of the residue a thing different in substance from what was contracted for, the party not in default may abandon the contract.

6.  Where neither party is at fault, the absence of the servant from the master's employ, by whatever cause occasioned, for an unreasonable length of time, will authorize the master to treat the contract as abandoned. What is an unreasonable length of time depends upon the nature and necessities of the business in which the servant is employed. The test is, does the delay so affect the interest of the master, that performance of the residue of the contract by the servant would be a thing different, in substance, from what the master contracted for.

7.  SAME—*mere offer without consideration or acceptance.*  Where a servant, employed for a term, is imprisoned without the fault of either party, and thereby prevented from performance for such a length of time as justifies the employer in abandoning the contract, a promise by the latter to continue him in his service if he will return by a certain time, without consideration, or ac-

ceptance by the servant, is not a contract, for want of consideration and mutuality. It is a mere offer, which may be withdrawn at any time before acted on by the servant, and such offer constitutes no estoppel when the servant has not changed his condition for the worse on the faith of it.

8. SAME—*notice of rescission of contract.* Where a servant is unavoidably detained from his service for an unreasonable length of time, the refusal of the employer to receive him in his employ on his return, is sufficient notice of the employer's election to treat the contract as abandoned.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. GARDNER & SCHUYLER, for the appellants:

The contract sued upon is a contract for personal service, and the question is, were the defendants guilty of a breach of the same. If not, this judgment should be reversed.

In contracts of this nature, the rule of law seems to be, that any act on the part of the servant tantamount to a breach of the contract, will justify the master in terminating the same; but that the servant may have a recovery *pro tanto* upon a *quantum meruit,* when the breach is without his own fault.

"When a servant is prevented from performing his contract *vi majore,* the question whether or not he is liable in damages for breach of contract, depends on circumstances. If he is carried to prison for a crime of which he is found guilty, or for a debt unpaid, then, as the contract was broken by his own voluntary act, he is liable in damages, and the master is free from the contract. But if, on the other hand, he is carried to prison on suspicion of being guilty of crime of which he is ultimately acquitted, he is not liable in reparation to the master, because there was no voluntary breach of engagement." Fraser's Master & Servant, 55, sec. 4; *The King v. Barton,* 2 Maule & Sel. 329; *Ryan v. Dayton,* 25 Conn. 188; *Melville v. De Wolf,* 4 Ellis & B. 844; *Turner v. Mason,* 14 Mees. & Welsby, 112; *Fenton v. Clark,* 11 Vt. 557.

Under the old rule, as laid down in *Cutler v. Powell,* 6 T. R. 320, and adhered to for many years, when the contract was entire, and the performance of one part was the condition of

the performance of the other, the party seeking to recover for a breach must have performed on his part, *inevitable accident to the contrary notwithstanding,* before he could sustain an action. *Appleby* v. *Dods,* 8 East, 300; *Hall* v. *Heightman,* 2 id. 145; *Paxdine* v. *Jane,* Alleyn, 27; *Atkinson* v. *Ritchie,* 10 East, 630; *Harmony* v. *Bingham,* 2 Kern. 99.

An examination of the adjudications on this subject, will show that they have been guarded with the utmost care, and that while the servant is permitted to recover compensation *pro tanto* for services rendered up to the time of the breach, he is not permitted to go beyond and recover for a breach in refusing to employ him. *Ryan* v. *Dayton,* 25 Conn. 188; *Turner* v. *Mason,* 14 Mees. & Welsby, 112; *Wolf* v. *Hewes,* 20 N. Y. 197; *Lantry* v. *Parks,* 8 Cow. 63; *Ford* v. *Danks,* 16 La. An. R. 119; *Libhart* v. *Wood,* 1 Watt & S. 265.

The first count in the plaintiff's declaration avers, that the plaintiff has at all times since December 1, 1874, been ready and willing to perform said contract, and *that he has performed.* The second count avers, that the plaintiff, in pursuance of the covenants of said contract, on the first day of December, 1874, entered on the performance of the same, and continued to serve defendant until the first day of February, 1875, and that during said time *he faithfully* performed; that plaintiff has at all times been ready and willing to perform said contract, and that on January 25, 1875, the defendants, without any just cause, refused to permit the plaintiff to continue in their employment as superintendent under said contract.

The law is well settled, that where a party suing for a breach of contract avers performance, without a *quantum meruit,* or a willingness to perform on his part, in order to entitle him to recover in the one case, he must prove performance, (*Taylor* v. *Beck,* 13 Ill. 376,) and in the other, he must show his *ability* to do so.

The plaintiff's evidence not sustaining the allegations of the declaration, and showing no right to recover, the defendant, after the plaintiff had rested, moved the court to instruct

the jury that the plaintiff was not entitled to recover on the case made by him, which the court refused to do, and in this, we submit, the court erred. *Amos* v. *Sinnott,* 4 Scam. 440; *Tefft* v. *Ashbaugh,* 15 Ill. 662; *Home* v. *Wilder,* 47 id. 510; *Smith* v. *Gillett,* 50 id. 290; *Toledo, Wabash and Western Ry. Co.* v. *Moore,* 77 id. 219; *Chicago, Burlington and Quincy Railroad Co.* v. *Gregory,* 58 id. 274.

Messrs. McCoy & Pratt, for the appellee :

The questions presented by this record are—

1. Did the involuntary absence of appellee for twelve days justify appellants in rescinding the contract?

2. If, during the absence of appellee, appellants gave verbal permission for its continuance for any given period of time, could they, before the expiration of that period, rescind the contract because of the absence?

3. Were the declarations of Hiller, made to persons other than appellee, competent evidence?

The contract binds appellee to give his *whole* time for three years to the business of appellants. Absence for an hour or a day, for any cause, would be a breach, and yet, it is manifest that *enforced* absence by reason of sickness or casualty, not the fault of the employee, for an hour or a day, would not give the employer the right to rescind the contract. It might give him a claim for damages, but not the right to rescind. It is not every breach or default of one party to a contract, that gives the other the right to rescind it; but the default or failure must be total, or such as to deprive the other of the substantial benefits of the contract. *Selby* v. *Hutchinson,* 4 Gilm. 332; *Doggett* v. *Brown,* 28 Ill. 493; *Cuckson* v. *Stones,* 1 Ellis & Ellis, 238.

The rescission of a contract by one party for the default of the other, is in the nature of a forfeiture. It is a penalty for non-performance, and as such, it may be waived. The waiver of forfeiture is simply permitting the contract to continue, and

not a varying of its terms or change of its conditions. *White* v. *Walker,* 31 Ill. 434; *Cook* v. *Murphy,* 70 id. 96.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action by appellee against appellants, upon a written contract, under seal, whereby the former agreed to render personal services for the latter, during a stipulated term, for a price agreed to be paid by the latter.

By the terms of the contract, appellee agreed to enter the employ of appellants as a superintendent and manager of the manufacturing department of appellants, (they being engaged in the manufacturing and selling of boys', youths' and children's clothing,) in connection with, and under the direction of Asher F. Leopold, and whenever required by appellants' firm or either member thereof, to assist in the purchase and sale of materials and goods manufactured by the firm, in such manner and at such times as the firm should direct. Appellee also agreed that he would continue in the employ of the firm for a period of three years from the 1st day of December, 1874, at which time his services were to commence; that during said time, he would devote himself entirely to the business of the firm, in the manner as agreed upon, giving his whole time, attention and skill thereto, and at all times work for the best interests of appellants.

Appellants, as a compensation therefor, agreed to pay appellee the sum of $3,000 per annum, in sums of $250 per month, at the expiration of each month.

Appellee commenced work, under the contract, on the 1st of December, 1874, and continued to render services thereunder until the 12th of January, 1875, when he was arrested by a United States marshal, under an order of the District Court of the United States for the Northern District of this State, and put in jail. He remained in jail until the 25th of the same month, when he was released on bail. Upon being re-

leased, he returned to appellants' establishment to resume work under the contract, but they, having obtained another foreman in his place whilst he was in jail, refused to receive him again into their employ.

Appellee has been paid for all the services he actually rendered, and the present suit is only to recover damages for appellants alleged breach of contract in not continuing him in their employ.

The judgment below was in favor of appellee for $500.

The covenants of appellee clearly constitute but one single and entire undertaking—each goes to the whole consideration.

The covenant of appellants to pay $3,000 per annum, although to be paid in monthly payments, was not for a part, but for the whole of the term. The covenant by appellee that he would devote himself entirely to the business of the firm, giving his whole time, attention and skill thereto, goes to the root of the whole matter, and when the situation of the parties, as disclosed by the evidence, is taken into consideration, it is manifest that the failure by appellee to perform his contract from the 12th to the 25th of January, inclusive, would render the performance of the rest of the contract by appellee a thing different, in substance, from that which appellants stipulated for. Appellants were engaged in an extensive business in the manufacturing and selling of boys', youths' and children's clothing. The month of January was their busiest season of the year. In that month they manufactured their goods for the spring trade, and in the latter part of it they sent out their traveling men with samples. When appellee was arrested, there were in appellants' employ fourteen cutters and three trimmers. It was his duty, as superintendent and manager, to superintend these, lay out their work, direct its performance, etc., and also to inspect and receive work from the tailors, besides discharging various other duties incident to the position he assumed. It required peculiar skill, knowledge and great promptness and fidelity. To delay the manufacturing in that month would, obviously, work immediate pecuniary

loss, to some extent, and must, necessarily, materially endanger the future prosperity of the business. Rival manufacturers would be enabled to forestall appellants in the trade of that year, and being once forestalled, they might not, during the term, recover their former trade; besides, the character and quality of work have much to do in building up and establishing a prosperous permanent trade in manufactured articles, and great risk, in that respect, would be incurred by the mere change of superintendents and managers; nor is it to be assumed that a person of competent experience, skill, energy and fidelity could be got, without a moment's warning, to fill such a position, and induced to stay, from day to day during such a season in the business, for a compensation approaching in any reasonable degree a *pro rata* part of that which he would be willing to accept for his services for a term of three years.

In our opinion, therefore, the failure of appellee to perform the services he had covenanted to perform, from the 12th to the 25th of January, 1875, was a substantial breach of his covenant.

Appellee has averred in his declaration, ability, readiness, and offer to perform, and his undertaking being an entire one, it was incumbent on him to make the averment and support it by proof. *Badgley* v. *Heald*, 4 Gilm. 64; *Swanzey* v. *Moore*, 22 Ill. 63.

Inasmuch, however, as appellants covenanted to pay for the services monthly, there could, doubtless, have been a recovery on the contract for the services rendered for the month of December, 1874, after the expiration of that month, without any allegation further than that of performance of the contract by appellee during that time; but, since that has been paid, and appellee seeks a recovery only for a breach of contract arising from his not being allowed to perform his part of the contract during the subsequent months, he is bound to aver and show readiness, ability and offer to perform the contract as to the subsequent time. This is held to be the rule in *Cunning-*

*ham* v. *Morrell,* 10 Johnson, 203, where KENT, Ch. J., carefully examines the authorities, and the court overrules its previous decisions in *Sears* v. *Fowler,* and *Havens* v. *Bush,* 2 Johnson, 272, 387.   This is approved in *Tompkins* v. *Elliott,* 5 Wendell, 496, *Bean* v. *Atwater and another,* 4 Conn. 3, and *McClure* v. *Rush,* 9 Dana, 64.

It may be conceded that appellee was put in jail without his fault, yet, this would not relieve him of his covenant to give his whole time, attention and skill to appellants' business.   It is not claimed to have been through appellants' fault that he was put in jail, and there is no reason, therefore, why appellants' business should suffer in consequence of it.   He might have guarded against this by an exception in his covenant, but he did not do so.

The rule is, it is a good defense to an action on a covenant or contract, that the obligation to perform the act required was dependent upon some other thing which the other party was to do and has failed to do.   And the defense is good, although the omission of the other party to do the thing required of him, was produced by causes which he could neither foresee nor control.   2 Parsons on Conts. (6th ed.) 674; Chitty on Conts. (11 Am. ed.) 1086.

There is a class of cases, where a party contracting to render personal services, after part performance, becomes disabled by inevitable casualty and is thereby prevented from fully completing his contract, has been held entitled to recover for the services actually rendered, upon a *quantum meruit.   Fenton* v. *Clark,* 11 Vt. 557; *Hubbard* v. *Belden,* 27 id. 645; *Dickey* v. *Linscott,* 20 Me. 453; *Wolf* v. *Hewes,* 20 N. Y. (6 Smith) 197.   But these furnish no warrant for the position that the laborer can, in such case, recover upon the contract for a failure to pay for future services which he has been prevented from performing.   On the contrary, they proceed upon the theory that the contract is discharged by the inevitable casualty, and therefore allow the party to recover simply for what he has earned.

Another class of cases may be found, where a party attempting to rescind a contract on account of the default of the opposite party, is held precluded by his acceptance of the property, labor, etc., of the opposite party.  But such cases can have no application here.  In those cases it is required that it shall be in the power of the party to abandon the materials or product of labor received and rescind the contract *in toto*, without an abandonment of his own property, and his failure to thus abandon them is construed as an acceptance of performance.  See *Eldridge* v. *Rowe*, 2 Gilm. 91.

Appellee's counsel cite *Cuckson* v. *Stones*, 1 Ellis & Ellis, 238, (102 Eng. Com. Law, 248,) and *Selby* v. *Hutchinson, Admr.* 4 Gilm. 332, in support of the position he assumes, that appellants' remedy for appellee's failure to keep and perform his covenants was by an action for damages, and that he had no right to treat the contract as abandoned by appellee.  The first case, in our opinion, is totally inapplicable to the facts here.  There, the plaintiff, by an agreement in writing, agreed to serve the defendant as a brewer for the term of ten years for a stipulated compensation.  He entered upon the performance of the contract, and some years afterwards fell ill, and was unable to attend to business from Christmas, 1857, until July, 1858.  He returned to defendant's service, when restored, and the defendant employed and paid him as before.  Defendant's counsel conceded, at the trial, that the contract was not abandoned, and the controversy was whether plaintiff should receive full wages during the time he was sick.  What was said has reference only to that state of case.  Here, appellee never was received into appellants' service after he was in jail.  He has done nothing for appellants since that time, and appellants have refused to receive him again into their employ because, they allege, his default justified them in treating the contract as abandoned.

In the other case, assumpsit was brought by Hutchinson as administrator of one Teed, for services rendered by Teed in his lifetime, in building a mill for Selby.  The work was done

under a special contract, and Teed died before the contract was fully performed on his part. His administrator offered to complete the contract, but Selby refused to allow this unless he would take out certain defective work and put other in its place. This, the administrator refused to do.

It was attempted to show, upon the trial, that Selby had not complied with his contract in not procuring certain material and having certain work done as promptly as it was needed and as required by the terms of the contract. On the other side, there was evidence showing that Selby's delay was through Teed's default in performing his part of the contract, and that the work to be done and materials furnished by Selby were done and furnished by the time Teed needed them. Teed never undertook to declare the contract abandoned, but, on the contrary, proceeded with his work as if he regarded the contract as still subsisting. It was held that, even if there had been cause of forfeiture, Teed waived it, and that he, and not Selby, was in default.

It will thus be seen the case varies materially, in the questions presented for consideration, from the present.

The general remark made by the court, in discussing the evidence, which counsel quote, that "in order to justify an abandonment of the contract, and the proper remedy growing out of it, the failure of the opposite party must be a total one; the object of the contract must have been defeated or rendered unattainable by his misconduct or default," is not understood as laying down the rule that to justify an abandonment of a contract the opposite party must have failed to discharge every obligation imposed on him,—but simply that matters which do not go to the substance of the contract, and the failure to perform which would not render the performance of the rest a thing different in substance from what was contracted for, do not authorize an abandonment of the contract; for, when the failure to perform the contract is in respect to matters which would render the performance of the rest a thing different in substance from what was contracted for, so far as we are

advised, the authorities all agree the party not in default may abandon the contract.

It is said in Wood's Law of Master and Servant, p. 233, sec. 120: "Sickness for a lengthened period—in one case two weeks—releases both parties from the contract. The master is not bound to wait, unreasonably, for the restoration of his servant's health; and *his necessities* may well be regarded as the measure of what is reasonable." See, also, *Hubbard* v. *Belden, supra.*

In *Poussard* v. *Spiers and Pond,* Law Reports, (Queen's Bench Division,) Vol. 1, p. 410, this rule is, in substance, recognized and applied by the court.

Where neither party is at fault, the absence of the servant from the master's employ, without his consent, (by whatever cause occasioned,) for an unreasonable length of time, we are of opinion authorizes the master to treat the contract as abandoned; and what, in such case, is an unreasonable length of time, depends upon the nature and necessities of the business in which the servant is employed. Under the facts here proved, a much shorter time than that during which appellee was confined in jail, might, in our opinion, be regarded as unreasonable. Under different circumstances, absence for a much greater length of time might furnish no cause for abandonment,—the question always being, does the delay so affect the interests of the master that the performance of the residue of the contract by the servant would be a thing different in substance from what the master contracted for.

There was evidence that after appellee was in jail, and whilst he was there, appellants agreed that if he got out and returned to his duties within a certain time, they would receive him into their employ. What that time was is controverted. Appellants claim that it was until the following Monday—appellee that it was two or three weeks. He was not out by the following Monday, but was out within two weeks—being released on the 13th day after his incarceration in jail.

Although we think appellants' version, sustained as it is by appellee's admission that the season in appellants' business was such that they could not do without him, at the most, for a greater length of time than two days, is more likely the correct one, we do not deem it of vital moment which is the truth.

This promise did not amount to a contract. There was no mutuality in it, and no consideration to support it. It was a mere offer, which might be withdrawn at any time before it was acted upon. It did not amount to an estoppel, because appellee did no act placing himself in a worse condition than he would otherwise have been in, on the faith of the promise. Had appellee been received again into appellants' employ, the promise, and the act of receiving him, would have been sufficient evidence of a waiver of a right to declare a forfeiture for the previous default. But not being received, and doing nothing on the faith of the promise to make his condition different or worse than it would have been had the promise not been made, it might be withdrawn at any time. It was a mere indication of a willingness to extend an indulgence on the part of appellee, which, like any other offered favor, might be withdrawn at pleasure, when no substantial right had become vested on the faith of it. See Bigelow on Estoppel (1st ed.) p. 560, sec. 4.

When appellants refused to receive appellee into their employ, upon his return to their place of business, he was fully and sufficiently notified of their election to treat the contract as abandoned, and he needed no other or different notice.

Inasmuch as the rulings and judgment of the court below are not in harmony with the views here expressed, the judgment is reversed and the cause remanded.

*Judgment reversed.*