## WILLIS H. BALLANCE

### v.

## LOUIS C. VANUXEM et al.

*Opinion filed June 19, 1901—Rehearing denied October 8, 1901.*

CONTRACTS—*to authorize termination, default need not be such as to defeat whole purpose of contract.* In order to authorize one party to a contract who is not in default to terminate the contract for default of the other party it is not necessary that such default be of a character to defeat the whole purpose of the contract, but it is sufficient if the default would render further performance a thing different, in substance, from what was contracted for.

*Ballance* v. *Vanuxem*, 90 Ill. App. 232, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

CHAMBERLAIN & RICE, and CHURCH, McMURDY & SHERMAN, for appellant.

JOSEPH CUMMINS, and HENRY A. GARDNER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellees recovered a judgment in the circuit court of Cook county against appellant in an action of assumpsit brought by them on a written contract executed by them and appellant. The Appellate Court affirmed the judgment, and appellant took this his further appeal to this court.

By agreement in the trial court a jury was waived, and the issues were submitted to the court for trial.

The contract was made on May 1, 1889, and by it the appellees, who were the general agents of the New York Life Insurance Company for the State of Illinois, appointed appellant, Ballance, agent of the company in

upwards of twenty-two counties in Central Illinois, with headquarters at Peoria, and with the title of general manager of the Central Illinois agency. By its terms the contract was to continue in force one year unless it should be terminated by mutual consent or by a violation of its terms and conditions or failure to comply therewith, in which event all moneys due by either party were to become immediately due and payable. The appellant was to appoint sub-agents and canvass the district thoroughly, and obtain applications for insurance in said company, collect and pay over the premiums, and perform such duties as should be required of him by such general agents in said business and be governed by their instructions. His compensation was to be a single brokerage commission of sixty per cent, graded, upon original first year's premiums which should be collected by him and paid over in cash to appellees, as such general agents. The contract also provided for certain bonuses to be paid to appellant upon his writing one million or one million and a half of insurance, but as no such amount was written this part of the contract need not be further stated. By the contract appellees agreed to advance to appellant $625 semi-monthly on account of the compensation to be paid to him personally,—that is, on all of the sixty per cent not paid to sub-agents and any bonus he might be entitled to; also $83.33 monthly for office expenses and clerk hire, which $83.33 balance was to be re-paid if the second year premiums should not be paid on at least $1,250,000 of insurance obtained by him. It also provided that all collections made by said Ballance should be paid over immediately to appellees or to the company, or in accordance with instructions; that all moneys or securities received or collected under the contract should be held by appellant in trust and used by him for no purpose whatever, but to be reported, held and transmitted to appellees or to the company, in accordance with instructions, but that appellees could off-

set against any of appellant's claims under the contract any debts due from him to appellees. Out of the sixty per cent commissions, graded, appellant was authorized to pay to sub-agents employed by him fifty-five per cent of first premiums received on policies written by them, but the balance, and all other moneys received by him on account of such insurance, were to be immediately paid over as above stated. Appellant gave the bond required by the contract and entered upon his work under the contract, and succeeded in obtaining, before the cancellation of the contract by the appellees on October 22, 1889, a large amount of insurance for the company, but not sufficient to entitle him to any of the bonuses mentioned in the agreement. Appellees remitted to appellant prior to the cancellation of the contract a total of $6250 of the semi-monthly advances they agreed to make, which, as we understand the contract, lacked but one of such advances so agreed to be made in that period of time; but as the decision of the Appellate Court is final as to all controverted questions of fact, it is not material that such facts be stated *in extenso.* Controversies arose between the parties, and appellant withheld premiums collected by him and failed to report or to remit them to appellees. He also failed to make reports to them of a considerable number of policies which had been sent to him for delivery to the assured, although appellees wrote him repeatedly demanding such reports and remittances and that he should comply with the contract in this regard. Appellant failing to comply, the appellees, on October 22, 1890, wrote him that because of his failure to comply with the terms and conditions of the contract said contract was terminated, and that they would commence suit immediately to recover the indebtedness due them on account of his breach of the agreement. This suit followed, and appellant, with his plea of non-assumpsit, filed his notice of special defenses relied on, claiming damages, exceeding plaintiffs' demand, for breach of

191—21

contract on their part, viz.: First, that plaintiffs did not allow him the exclusive use of the district, as they had contracted, but appointed other agents in the same; second, that they did not supply him with suitable blank applications for policies, and other necessary blanks; third, did not provide him with a book-keeper, as they had agreed; fourth, did not advance to him, as agreed, $625 semi-monthly during the term of the contract, but only ten of such semi-monthly payments, and many of those not at the times agreed upon; fifth, did not advance him, monthly, the $83.33 for office rent during the period of the contract. There were other minor specifications not necessary to mention. The issues thus made were, after hearing the evidence, found for the plaintiffs, and the affirmance by the Appellate Court of the judgment rendered on such findings is as conclusive upon the parties and upon this court, as to all controverted questions of fact, as if the trial had been by a jury. We need not, therefore, follow counsel in their arguments upon the facts any further than a proper consideration of the questions of law raised may require.

At the close of the evidence the court refused to hold as law in the decision of the case, as requested by the defendant, that upon the whole evidence the plaintiffs were not entitled to recover. We have carefully read the evidence and the arguments of counsel, and are of the opinion that there was sufficient evidence to sustain the findings of the court and that it was not error to refuse to hold the proposition in question. The principal question was, of course, whether or not the plaintiffs had the right to rescind the contract and to recover the balance due them for advances, etc. The court held as law in the case the proposition of defendant below that the covenants in the contract of the respective parties were mutual and dependent covenants, those of each forming the consideration for those of the other, and that neither party who was in default in any material respect would

have the right to terminate the contract for the default of the other party; and the court further held, for the defendant, that if the act of the plaintiffs in terminating the contract was wrongful, then they were not entitled to a return of the moneys advanced to the defendant under the contract. But the court refused to hold this proposition asked by the defendant:

"The plaintiffs had no right to abandon or terminate the contract with the defendant because of a default by the latter in the performance of some covenant or covenants, unless the default were of such a nature as to defeat the whole purpose of the contract."

And such refusal is assigned as error. In considering this branch of the case we shall assume, as the evidence tends to prove, that appellant was in default, and had failed, without sufficient cause, to comply with his contract in matters which were of the substance of the contract, but that his default, although persisted in against the remonstrances of appellees, was not of such a nature as to defeat the whole purpose of the contract.

Appellant's contention is, that the failure of Ballance to comply with the contract must have been total to authorize a rescission by appellees, and in support of the proposition *Selby* v. *Hutchinson*, 4 Gilm. 319, and other cases containing similar language, are cited. The gist of the decision, as applicable to the facts in that case, is contained in the following language used in the opinion (p. 332): "For partial derelictions, and non-compliances in matters not necessarily of first importance to the accomplishment of the object of the contract, the party injured must still seek his remedy upon the stipulations of the contract itself." True, it was also said that "in order to justify an abandonment of the contract, and of the proper remedy growing out of it, the failure of the opposite party must be a total one; the object of the contract must have been defeated, or rendered unattainable by his misconduct or default." But in *Leopold* v. *Salkey*,

89 Ill. 412, this court said (p. 422): "The general remark made by the court [quoting it as above] is not understood as laying down the rule that to justify an abandonment of a contract the opposite party must have failed to discharge every obligation imposed on him, but simply that matters which do not go to the substance of the contract, and the failure to perform which would not render the performance of the rest a thing different, in substance, from what was contracted for, do not authorize an abandonment of the contract, for when the failure to perform the contract is in respect to matters which would render the performance of the rest a thing different, in substance, from what was contracted for, so far as we are advised the authorities all agree the party not in default may abandon the contract." (See, also, *Lake Shore and Michigan Southern Railway Co.* v. *Richards*, 152 Ill. 59). As applied to the case at bar we are of the opinion the court properly refused to hold as law in the decision of the case the proposition as presented; that it was not necessary that the appellant's default should be "of such a nature as to defeat the whole purpose of the contract," to entitle the appellees to terminate it.

It is to be implied from the contract itself that it might be terminated by mutual consent or by failure to comply with its provisions, and that upon such termination all moneys due under it to either party from the other should become immediately payable. But the chief defense relied on is, that appellees were themselves in default, and did not remit to appellant the semi-monthly advances and the money for office rent, and furnish appellant with a book-keeper, as they had agreed by the contract, but only complied in part with their agreement in this respect, and that, being in default themselves, they could not terminate the contract because of appellant's default. Inasmuch as the facts have been conclusively found against appellant on this branch of the case, and as the court held as law in the decision of the case

the proposition presented by appellant applicable thereto, no question of law is left for us except the one presented by the proposition that upon the whole evidence the plaintiffs were not entitled to recover,—and that we have already considered.

Complaint is made, however, that the court improperly modified two of the defendant's propositions, and then held them, thus modified, as law in the decision of the case. These propositions, as modified and held, did not announce or apply any rule of law harmful to appellant's defense. By the terms of the contract it was agreed that the agents in said district already under contract with appellees should be the subordinate agents of appellant, to be paid by him out of, but not to exceed, his sixty per cent, and that all insurance in the district for said company should be effected through him, under his contract. Appellant contended that appellees had an agent,—one Smith,—in the district under a contract of earlier date than his own, who contracted insurance for them on his own account without any information having been given to him of such contract, and that they thereby perpetrated a fraud on appellant which precluded recovery by them. There was a conflict in the evidence as to the extent of the information given appellant by appellees, at or before executing their contract, in respect to the character or terms of Smith's contract, but, as on other questions of fact, the finding was against appellant. As applicable to this question the court held a proposition as law in the case that it was the duty of the plaintiffs, before making the contract with defendant, to inform him of the existence and character of Smith's contract, and that if they failed to do so it was a fraud on him which would preclude recovery by them in the action.

Complaint is made that the court refused to hold as law another proposition presented on this question, but the court had held all that was necessary in the propo-

sition above mentioned, and which embraced all that was important in the one refused. No error of law was committed.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*