No. 20,900.

T. M. JINNINGS, *Appellee*, v. W. A. AMEND, E. R. AMEND and JOHN RATZLOFF, *Appellants.*

SYLLABUS BY THE COURT.

LEASE—*Lessee to Live upon Land—Partial Performance—Lessee Convicted and Incarcerated in Jail—Rescission of Contract—Compensation to Lessee.* Where a written contract in the form of a three-year lease of farm land provides that the lessee shall reside upon it and cultivate it in a good and careful manner, raising wheat and delivering one-third of the crop to the lessor, and the lessee after doing considerable work on the place, but before sowing any wheat, is arrested on a charge of having committed a felony, and on conviction imprisoned in the county jail for about six months, the lessor is entitled to rescind the contract and take and retain possession of the land, notwithstanding the contract contains no provision giving a right of forfeiture or reëntry for any fault of the lessee.

Appeal from Gray district court; LITTLETON M. DAY, judge. Opinion filed June 9, 1917. Reversed.

*William Osmond, Elrick C. Cole,* both of Great Bend, and *John Harper,* of Cimarron, for the appellants.

*Edgar Foster,* of Dodge City, for the appellee.

The opinion of the court was delivered by

MASON, J.: W. A. and E. R. Amend, residents of Great Bend, were the owners of 960 acres of land in Gray county. In February, 1915, they entered into a written agreement with T. M. Jinnings, providing that he was to occupy and farm it for three years, one-third of the crop (wheat) to go to the owners. The contract also provided for his breaking out 500 acres of new land the first year and raising a wheat crop thereon for the benefit of the owners, to be paid in cash for his services in this connection. By September 28, 1915, Jinnings had broken the 500 acres of sod and plowed 400 acres of cultivated land, but had not sowed any wheat. On that day he was arrested, charged with a felony. He was held in custody until the October term of the district court, when he was convicted and sentenced to serve six months in the county jail. He appears not to have attempted to make any arrangement for the carrying on of the work, and to have been out of funds and credit. He remained in jail until about March 1, 1916, when he was paroled. Within a day or two after the arrest the Amends took possession of the land, which they have ever since retained. Upon the parole of Jinnings they told him that they would not permit him to return to the premises. On April 11, 1916, he brought an action of forcible entry and detainer against them, joining as a defendant John, Ratzloff, to whom they had given a lease. By the consent of the parties the case was transferred to the district court under an agreement that all the matters in controversy should be determined in one action. A referee heard the evidence and made detailed findings covering all transactions connected with the land contract. Judgment was rendered awarding the plaintiff possession of the land, and requiring him to pay $1859.10, the amount found due the Amends on an accounting. The defendants appeal.

The plaintiff invokes the rule that in the absence of an express provision on the subject in the lease a lessor can not terminate the tenancy on account of a breach of covenants by the lessee. (18 A. & E. Encycl. of L. 369; 24 Cyc. 1349; 24 Cyc.

1392; 16 R. C. L. 969; 16 R. C. L. 1115.) He contends that the written contract was a lease, creating the ordinary relation of landlord and tenant, and that inasmuch as it contained no provision for a forfeiture, no failure to perform the agreements on his part could give the defendants a right of reëntry. The defendants maintain that if the contract was a lease at all it was not an ordinary one; that it was more in the nature of a "cropper's" agreement for the cultivation of land on shares, and that an essential part of it was the plaintiff's undertaking to perform personal services; that when by his own misconduct he was disabled from carrying out a material part of the agreement he had undertaken, they were at liberty to rescind the contract, settling with him on an equitable basis for what he had already done. The contract used language appropriate to a lease; it purported to create a tenancy for three years. That consideration, however, is not necessarily controlling, as the effect of the instrument is to be determined from its real intent, as gathered from its entire contents, regardless of the technical words used. (16 R. C. L. 584.) It included clauses reserving a right to the owners to go upon the place at all times, requiring the plaintiff to pay the defendants one-third of any receipts for pasturing cattle on the wheat, and providing for a delivery of possession in case of a sale, compensation to be made for the growing crop. We do not consider it necessary to decide what expression most fitly describes the relationship into which the parties entered. There is nothing peculiar about a lease that takes it out of the operation of the rules of fair dealing that govern in other contractual relations. Here the essence of the arrangement was that the defendants were to furnish the land and certain implements, material and money, and the plaintiff was to furnish his care, skill and labor, and the proceeds were to be divided. Although the contract may be said to have created an estate in the land, it was essentially executory—its provisions were mutually dependent. The plaintiff was not in control of the land to use it at his pleasure. He was bound to handle it in a stated way, and to perform certain acts with regard to it, and these obligations were as important as any other part of the contract. His personal services were engaged; his skill as a farmer was involved; he had no power of substitution or subletting. (See, in this connection,

*Randall v. Chubb,* 46 Mich. 311, and *Myer v. Roberts,* 50 Ore. 81.) Notwithstanding the absence of any reference in the contract to a right of reëntry, it can not be doubted that if he had completely abandoned the place, or had utterly, refused compliance with the agreement, the owners would not have been required to permit the land to remain idle for several years. A clause of the agreement gave them a right to furnish additional help in the management of the farm, at the charge of the plaintiff, if thought by them to be necessary. But this can not be regarded as an exclusive remedy. It is not adapted to such a situation as that suggested, nor were the defendants bound to pursue it. The matter to be determined is the effect upon the relations of the parties of the plaintiff having been arrested, convicted and confined. There seems to be a dearth of cases bearing upon that question. In *Leopold et al. v. Salkey,* 89 Ill. 412, annotated in 31 Am. Rep. 100, an employer was held to have the right to discharge an employee who had been hired for a fixed period, because of his being arrested and held in custody for two weeks. That contract was perhaps not closely analogous to the one now under consideration. Moreover, the loss of time was treated as one for which the person arrested was not to blame, so that the principle applied would not be particularly helpful here. The gravity of the charge of which the plaintiff was convicted indicates that it implied moral turpitude. While the doctrine of *res judicata* has no application, we must act upon the theory that the conviction was rightful. It can not be assumed that a miscarriage of justice occurred, nor could an inquiry into that matter be permitted where it is collaterally involved in civil litigation. (*Burt v. Union Central Life Insurance Co.,* 187 U. S. 362.) This situation is therefore presented: The plaintiff, having obtained possession of the land under a three-year contract, a material part of the consideration being that he should put in a wheat crop in the fall of 1915, was disabled to perform his agreement in that respect (as well as in some others) by reason of his having committed a crime. The disability was self imposed. He was entitled to no more favorable treatment than if he had purposely interposed an insurmountable obstacle to the carrying out of the contract, or had abandoned or repudiated it.

"Where one of the parties to a contract, before the time for performance arrives, has placed himself, by his voluntary act or conduct, in such

a situation that he is unable to fulfill his part of the agreement, it may be treated as an anticipatory breach of the contract or as a case of impossibility of performance subsequently arising; and in either view, the other party to the contract may thereupon rescind it and recover whatever consideration he may have given under it, or treat it as abandoned, and sue at once for such damages as he may have sustained. The inability to perform need not relate to the whole and every part of the contract, but it must exist with reference to some substantial particular, going to the very essence of the contract and defeating its main purpose and object, or to a part so essential to the residue of the contract that it can not reasonably be supposed that the other party would have made the contract without it." (1 Black on Rescission and Cancellation, § 210.)

The right of the plaintiff to occupy the land for three years was expressly granted in consideration of his personal occupancy and services. By fair implication it was conditioned upon his being able to comply with that requirement—at least upon his not voluntarily divesting himself of such ability. His enforced withdrawal from active life was not within the contemplation of the parties to the contract. There was practically a destruction of an important part of the subject matter of the contract. The fact that the defendants were willing to agree that the plaintiff should have the right to occupy the farm for three years, assuming that he was to remain a free agent, affords no presumption that they would have been willing to grant him that privilege if he was to be imprisoned for a considerable part of the time. No question of forfeiture, strictly so called, is involved. We think the defendants were entitled to rescind the contract by reason of the plaintiff having disabled himself from performing a material part of his agreement—a part going to the very foundation of the contract, without which it presumably would not have been entered into; that their conduct amounted to an enforcement of this right; that they should be allowed to retain possession of the land, and that the plaintiff should be compensated on an equitable basis for the services performed and expenditures incurred by him prior to his arrest.

The findings of fact made by the referee and approved by the court need not be disturbed. But as the accounting was made upon the theory that the plaintiff would be restored to possession a readjustment will be necessary.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.