## JONES v. CAMPBELL–TAGGART ASSOCI-ATED BAKERIES, Inc., et al.

### No. 6423.

Circuit Court of Appeals, Fifth Circuit.

Feb. 2, 1933.

W. E. Terrell, of Waco, Tex., for appellant.

Dick O. Terrell and J. C. Hall, both of San Antonio, Tex., and Wendell H. Cloud, of Kansas City, Mo., for appellees.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

In this case the record supports the following conclusions as to the material facts, stated somewhat more in detail than as found by the District Court. Appellant, George O. Jones, is a practical baker and skilled executive of some 20 years' experience. In 1917 he was employed as a baker by the Campbell Baking Company, of which Winfield M. Campbell was president. Campbell became interested in him. Jones showed exceptional ability, and was from time to time promoted. The Campbell Baking Company merged with other companies owning and operating bakeries in various cities. Appellee, the Campbell-Taggart Associated Bakeries, Inc., grew out of these consolidations, and Campbell became chairman of the board. One of its subsidiaries is the C. J. Patterson Corporation, which company is in the business of selling machinery and supplies to bakers, and financing the erection of new plants. In 1925, on the recommendation of Campbell, Jones was made manager of a bakery in Little Rock, operated by the Patterson company. He was desirous of having a business of his own and the Patterson company agreed to finance the erection of a plant. In 1927 Jones visited a number of cities looking for a suitable location. During that time he was employed by the Patterson company, selling its products to bakeries, in order to pay his expenses. Waco, Tex., was finally selected, and on June 14, 1927, a contract was executed between Jones and the Patterson company, for the erection of a bakery in that city. It was agreed that a corporation should be organized to build and operate a bakery, with a capital of $200,000 of preferred stock, entitled to 7 per cent. cumulative dividends, and 2,000 shares of no par common stock; Jones to manage and operate the bakery. A Delaware corporation was organized under the name of the Hilltop Baking Company. Jones subscribed to $5,000 of the preferred stock, was given a bonus of 22½ per cent. of the common stock, or 450 shares, and was paid a salary of $5,000 a year. The bakery was built, paid for out of subscriptions to the preferred stock, and began operations in January, 1928. A Texas corporation of the same name was organized with Jones as the president and manager. The Delaware corporation owned all its stock as a holding company. The Campbell-Taggart Associated Bakeries, Inc., owned the controlling interest in the Delaware corporation. When the Hilltop Bakery began operations, there were 13 other bakeries in Waco. It prospered under Jones' efficient management, secured a majority of the business in the city, and was earning about $15 per share on the common stock. Jones was desirous of owning a controlling interest in it. In 1929 he began negotiations with Campbell for the acquisition of that interest. The contract between Jones and the Patterson company provided that in the event Jones died or severed his connection with the bakery prior to January 1,

1933, the company would purchase his stock at a price to be agreed upon or fixed by arbitration. Jones was advised that appellee would not part with its control. However, Campbell was sympathetic with his desire to have a bakery of his own, conceded that he was entitled to a larger field than Waco for the exercise of his talents, and conceded that appellee was obligated to buy his stock in the Hilltop Bakery in the event he severed his connection with it. On October 25, 1929, Jones had an interview with Campbell in Kansas City and he agreed to buy Jones' common stock at $100 per share; Jones to remain as president and general manager of the Waco bakery until January 1, 1931. This agreement was evidenced by a letter, little more than a memorandum, signed by Campbell and O.K.'d by Jones. The sale was to be consummated in the future. The letter was silent as to this time, but it was understood between the parties that it would be shortly prior to December 31, 1930. Jones returned to Waco and continued his active management of the Hilltop Bakery. About the 12th of August, 1930, R. B. Albaugh discovered that a bakery in Waco, known as Fisher's Hot Shop Bakery, was insolvent. Albaugh was engaged in the transportation business and knew nothing about operating a bakery. He was well acquainted with Jones, and knew of his successful management of the Hilltop Baking Company. He asked Jones to look over the Hot Shop Bakery, as he had confidence in Jones' judgment. Jones reported that the Fishers had a nice plant, some new machinery, and the machinery part was worth about $43,000. Albaugh estimated the worth of the property, including the machinery, buildings, and real estate, to be about $90,000. He made an offer to buy the Hot Shop Bakery on terms equivalent to paying approximately $60,000. Albaugh testified he asked Jones to go in with him at about that time, but Jones replied that he could not do so as he had a contract with the Hilltop Bakery to act as manager until January 1, 1931. Jones again went to Kansas City, and on September 16, 1930, had another interview with Campbell, who represented appellee. At that interview Campbell agreed to complete the purchase of Jones' stock for $45,000 as of October 1, 1930, the stock to be transferred on the books on that date, Jones to remain as president and manager until January 1, 1931, as originally agreed, and thereafter to be a director. At this time Jones turned in his stock, received $5,000 cash, on which he was to pay interest up to October 1st, as against which

he was to receive the dividends on his stock to that date, was given a note of the Campbell-Taggart Company for $35,000, bearing interest at 4 per cent. per annum, dated October 1, 1930, due January 1, 1931, payable to Jones' order, and was also given a note for $5,000, executed by one C. R. Turner, due February 4, 1931, which was an asset of the Hilltop Baking Company. This agreement was not reduced to writing in any form. Campbell testified that Jones told him he had decided to open a bakery in East St. Louis, Ill., where his brother, also a practical baker and acquainted with the trade, was located. Campbell was corroborated by other witnesses. Jones testified that he did not tell Campbell he was going to East St. Louis. However, he testified that after he left Kansas City he talked with a named person regarding the financing of a plant in East St. Louis; that he knew there was a possibility in Waco and it was kept in the background of his mind to locate in Waco, but he had expected to locate in another city; that he had taken no action with regard to locating in Waco. Jones returned to Waco and resumed his management of the Hilltop Bakery. A few days later he agreed to go in with Albaugh in the purchase of the Hot Shop Bakery and notified Campbell, by a letter dated September 24, 1930, that he had been unable to finance a plant in East St. Louis so was purchasing an interest in a local bakery in Waco. Albaugh then closed his purchase of the Hot Shop Bakery on September 23, 1930. A corporation was organized under the name of the Jones Baking Company by Jones, Albaugh, and N. A. Flood, Jr., on September 25, 1930. The same day Albaugh transferred to it the plant of the Hot Shop Bakery, on practically the same terms as he had purchased it, and the Jones' Baking Company went into active business, with Jones as president and manager, owning about 50 per cent. of its stock, which virtually gave him control. Jones at once solicited and secured business from certain customers of the Hilltop Baking Company. At least one of its salesmen was employed by Jones, and five others asked him for employment. After learning of Jones' action, appellee promptly brought this suit, on September 29, 1930, before the date of the note and before the transfer of the stock on the books of the company, to rescind and set aside the sale, on the grounds that Jones had been guilty of fraud in concealing his intention to engage in competition in Waco, and by doing so had brought about a failure of consideration. As Jones had pledged the notes of appellee and

Turner to the Liberty National Bank, it was joined as a party, and an injunction against the disposal of the notes was sought. There was a decree in favor of appellee as prayed for, recognizing the superior lien of the bank on the notes. This appeal by Jones followed. The Liberty National Bank has not appealed.

The District Court found the facts substantially as above set out. Based thereon, he found that it was a necessary and vital element of the future success of the business of the Hilltop Baking Company that in the event Jones left its employment as president and active manager said company should receive all the good will which he had built up by his efforts; that Jones agreed that the business would receive all his good will arising from his active management of the plant and the conduct of its business; that he would remain as president and active manager of the company until he should decide to go to a larger city than Waco; that when he did so, he would continue as a member of the board of directors of the Hilltop Baking Company; that the good will of Jones went into and was regarded by the parties as forming part of the consideration arrived at on September 16, 1930, to be paid for the purchase of Jones' stock; that it was understood that Jones would organize a bakery in East St. Louis, Ill.; that had appellee known that Jones intended entering into active competition in Waco, his stock would not have been purchased. The record amply supports these findings.

The District Court also found that Jones was not guilty of fraud in concealing his intention of engaging in business in Waco, as that intention did not develop until after the sale had been consummated. The facts create a strong presumption to the contrary.

■ It is urged that good will as an asset appertains only to a business and not to an officer of a corporation conducting the business. Therefore, Jones had no good will to convey. Strictly speaking, that is true, and if Jones had attempted merely to sell his good will in the business of the Hilltop Bakery, the contract could not have been enforced. However, the good will of a business arises from a reputation for fair dealing and the quality of the goods sold. There is no doubt that Jones had become so identified with the management of the Hilltop Bakery and the excellence of its products that his personality entered into any good will the business enjoyed.

■ Whether it be called a transfer of his good will or something else it was a very material part of the consideration for the sale of his stock that Jones would thereafter compete with the Hilltop Bakery by establishing his own bakery under his own name in Waco. It is highly probable that Jones intended becoming interested in the Hot Shop Bakery when he arranged to accelerate the sale of his stock, and was guilty of constructive fraud in concealing that intention. But in any event there is no doubt he convinced Campbell that he would not be a competitor in Waco. It is beyond belief that Campbell would have purchased stock, the value of which depended almost entirely on future profits, if he had even suspected an intention on the part of Jones to become a competitor, as it is obvious that under that condition the stock would have very much less value. When making the sale of his stock it would have been competent for Jones to have entered into a valid contract to not engage in the bakery business in Waco for a reasonable time. But the parties were very friendly and not dealing at arm's length. Campbell was interested in the future welfare of Jones and believed his representations that he would locate elsewhere than Waco, would not be a competitor of the Hilltop Bakery, and would continue to give it his own good will and assistance for its continued success. Relying upon these representations, no written contract to that effect was drawn up; but it is clear that it was the intention of the parties that their future conduct would be the same as if such a definite agreement had been reduced to writing.

By engaging in competition with the Hilltop Bakery in Waco, within 10 days after selling his stock, Jones destroyed a material consideration for the purchase of that stock. Courts of equity are not bound by the strict rules of the common law. Fundamental maxims are that equity looks to the intent rather than the form, and will not suffer a wrong without a remedy. Equity and good conscience require that the transaction be set aside and the parties restored to their previous positions. We are not aware of any authority directly in point, but the following well-considered cases, in principle, at least, support these conclusions. Durham v. Lewis, 231 Ky. 601, 21 S.W.(2d) 1004; Kradwell v. Thiesen, 131 Wis. 97, 111 N. W. 233; S. Jarvis Adams Co. v. Knapp (C. C. A.) 121 F. 34; Up River Ice Co. v. Denler, 114 Mich. 296, 72 N. W. 157, 68 Am. St. Rep. 480; Fleckenstein Bros. Co. v. Fleckenstein, 76 N. J. Law, 613, 71 A. 265, 24 L. R. A. (N. S.) 913; Legg v. Hood, 154 Ga. 28, 113 S. E. 642; Watson v. Ford (C. C.

A.) 93 F. 359; Kanaman v. Hubbard, 110 Tex. 560, 222 S. W. 151; Dishman v. Huetter, 41 Wash. 626, 84 P. 590; Ballance v. Vanuxem, 191 Ill. 319, 61 N. E. 85; Townsend v. Hurst, 37 Miss. 679; Munsey v. Butterfield, 133 Mass. 492.

The judgment of the District Court was right.

Affirmed.