FIRST NATIONAL BANCSHARES OF BELOIT, INC.; Jerome J. Eilert; Thomas H. Conroy; Frances Gronewoller; Robert L. Lampert; Phil G. Thull; F.W. Lampert Trust B; Andra V. Lampert; Frances Gronewoller as Custodian for Eric, Paul, and Aaron Lampert; and Robert D. Meats, Plaintiffs,

v.

Joseph S. GEISEL, Jr., Edward P. O'Connor, Terrence J. Lillis, Co–Trustees of Frances H. Giblin Trust No. 1; and Terrence J. Lillis, Guardian and Conservator of Frances H. Giblin, Defendants.

Civ. A. No. 92–4279–DES.

United States District Court,
D. Kansas.

Jan. 15, 1993.

Charles D. Green, Arthur, Green, Arthur, Conderman & Stutzman, Manhattan, KS, for plaintiffs.

Roger D. Stanton, M.J. Willoughby, Stinson, Mag & Fizzell, Overland Park, KS, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the plaintiffs for a preliminary injunction.

The plaintiffs, a bank holding company and its minority shareholders, initially filed this action in the District Court of Mitchell

County, Kansas, on November 5, 1992. On the same date, the district judge granted an *ex parte* temporary restraining order against the defendants, the co-trustees of the Frances H. Giblin Trust No. 1 ("trust") and the conservator for Frances H. Giblin. The trust, established for the benefit of Frances H. Giblin during her lifetime, is the majority shareholder of the plaintiff bank holding company. The plaintiffs seek equitable relief in the form of specific performance of an alleged stock option agreement, and an injunction prohibiting defendants from voting the trust's stock in the plaintiff corporation or disposing of the stock. On December 4, defendants removed the case to this court on the basis of diversity jurisdiction.

Frances Giblin is 89 years old and in ill health. On March 20, 1991, she was determined legally incapacitated by the Probate Division of the Circuit Court of Jackson County, Missouri, where she presently resides. In 1985, she transferred the bulk of her assets to the *inter vivos* trust established for her benefit, including 770 shares of common stock in First National Bancshares of Beloit, Inc., ("bank holding company"), the corporate plaintiff in this action. The trust's 770 shares represent 61 percent of the outstanding voting stock of the plaintiff bank holding company. The named individual plaintiffs are the other shareholders of the bank holding company, who together hold 39 percent of the outstanding stock. The plaintiff bank holding company owns 100 percent of the stock of the First National Bank of Beloit.

In 1982, Frances executed a document titled "Option" which purported to give plaintiff bank holding company a first right and option to purchase her 770 shares of stock within one year after her death for a price determined by a formula. The formula permitted the option price to increase with the value of the corporation. The document provided that Frances was to concurrently deposit with the escrow agent a stock certificate and a separate assignment transferring the stock to plaintiff bank holding company. Upon exercise of the option by the bank holding company within one year after Frances Giblin's death, the escrow agent was to deliver the certificate and assignment to the holding company. Otherwise, the certificate and assignment would be returned by the escrow agent to the personal representatives of the estate. The option was signed by Frances and by a representative of the holding company acting as designated escrow agent. However, the document was not executed by the bank holding company as holder of the option to purchase the stock. By its terms, the option was binding on Frances's successors.

In 1989, the option was amended to change the price to a flat figure of $1,898,803, payable to the trust established in 1985. It is undisputed that the amended price represented the result of applying the formula set forth in the 1982 option to the book value of the bank holding company as of the end of calendar year 1988, thereby "capping" the price. The amended option document was signed by Frances Giblin and Jerome Eilert, then co-trustees of the trust. Like the 1982 option, the document was signed by a representative of the bank holding company as escrow agent, but not as the holder of the option.

Although she has been declared legally incapacitated, Frances Giblin is still living. The present co-trustees of the trust, who are defendants in this action, concede they communicated to plaintiffs that they did not believe the "option" was valid, and thereby revoked it. The plaintiffs then brought this suit in state court for anticipatory breach, and were successful in obtaining an *ex parte* temporary restraining order barring defendants from voting their controlling interest in the bank holding company at the annual shareholders' meeting on November 10, 1992, or at any subsequent shareholders' meeting.

The temporary restraining order granted by the District Court of Mitchell County, Kansas, on November 5, 1992, expired as a matter of law effective December 14, 1992, ten days after the case was removed to this court by the defendants on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). *See* this court's Memorandum and Order dated January 4, 1993.

Plaintiffs now seek a preliminary injunction to enjoin and prohibit the defendants from:

(1) voting the 770 shares of common stock of plaintiff bank holding company owned by the trust on any issue or item of business which may properly come before any annual shareholders meeting of the bank holding company that may be scheduled at any time during the pendency of this suit;

(2) voting the 770 shares for or against any issue or item of business which may come before any subsequent shareholders meeting, annual or special, of the bank holding company at any time during the pendency of this action or until further order of the court; or

(3) selling, assigning, pledging, hypothecating, or otherwise disposing of any or all of the 770 shares during the pendency of this case.

The issuance of a preliminary injunction is within the sound discretion of the trial court. *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 354 (10th Cir.1986). To obtain a preliminary injunction in federal court, the movant has the burden of establishing that:

(1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992) (quoting *Tri–State Generation & Transmission Ass'n, Inc., v. Shoshone River Power, Inc.*, 805 F.2d at 355). If the moving party satisfies the first three elements, the standard for meeting the fourth requirement, likelihood of success on the merits, generally becomes more lenient; the movant need only show that the issues are so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation. *See Tri–*

*State Generation & Transmission Ass'n,* 805 F.2d at 358; *see also Otero Savings & Loan Ass'n v. Federal Reserve Bank*, 665 F.2d 275, 278 (10th Cir.1981).

However, certain types of preliminary injunctions are disfavored, including those that disturb the status quo and those that afford the moving party substantially all the relief he may recover at the conclusion of a full trial on the merits. *See SCFC ILC, Inc. v. VISA USA, Inc.*, 936 F.2d 1096, 1098–99 (10th Cir.1991). In order to prevail in such cases, the movant must satisfy the even heavier burden of showing that the four required factors "weigh heavily and compellingly in movant's favor...." *Id.* at 1098. A preliminary injunction that alters the status quo is particularly disfavored. *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir.1980), *cited with approval in SCFC ILC, Inc. v. VISA USA, Inc.*, 936 F.2d at 1099.

■ In the case presently before the court, the requested injunction would alter the status quo by precluding the defendant trustees from exercising their right to control the plaintiff corporation and the bank by voting the trust's majority interest in the bank holding company. The plaintiffs argue that the intent of Frances Giblin, in executing the 1982 option and amending it in 1989, was to permit continued local control of the First National Bank of Beloit after her death. They contend that if the defendant trustees "acquire" control of the board of directors of the holding company, the individual minority shareholder plaintiffs will suffer irreparable injury. However, the trustees already have control of the bank holding company by virtue of their fiduciary relationship to the trust and Frances Giblin, the beneficiary of the trust. The requested preliminary injunction would substantially alter the status quo by barring the defendant co-trustees from exercising their present right to vote the 770 shares held by the trust, thereby permitting the plaintiff minority shareholders to control the bank holding company and the bank.

The requested preliminary injunction would also have the effect of granting

plaintiffs substantially all the relief they would obtain if they were to succeed in a trial on the merits. The complaint in essence seeks specific performance of the 1989 option, allowing the plaintiff minority shareholders to acquire the trust's 770 shares. The result desired by the plaintiffs is to collectively acquire 100 percent ownership of the bank holding company and consequently acquire complete control of the First National Bank of Beloit. Were the court to grant the preliminary injunction, it would have the effect of permitting the minority shareholders to collectively exercise control of the bank, since the defendants would be barred from voting the trust's shares in the bank holding company. Further, the minority shareholders would have the benefit of exercising full control of the bank without paying any consideration to the trust, not even the $1,898,803 amount that all parties agree significantly understates the present value of the trust's 770 shares.

Having determined that the preliminary injunction sought by the plaintiffs would alter the status quo, the court must determine whether the plaintiffs have shown that each of the four factors weighs heavily and compellingly in their favor. Because the court has determined that the plaintiffs have fallen far short of their burden on two of the required factors, it is unnecessary to analyze the others.

The court finds that the threatened injury to the movant from denying the preliminary injunction does not "heavily and compellingly" outweigh the damage the proposed injunction would cause the opposing parties. Plaintiffs essentially contend that they will lose control of the bank holding company and thus control of the bank absent the preliminary injunction. However, plaintiff minority shareholders have not established that they have ever exercised control of either the bank or the bank holding company. While Frances Giblin was capable of doing so, she actively participated in the affairs of both the bank and the holding company, regularly attending monthly meetings of the directors of each corporation. After she was determined legally incapacitated and replaced as co-trustee of the trust, control of the bank holding company passed to the co-trustees. Since the plaintiff individual minority shareholders have never had control of the bank holding company, the claimed irreparable harm that would result from denying the preliminary injunction is illusory.

On the other hand, granting the preliminary injunction would have the effect of completely transferring control of the bank holding company and the bank to the plaintiff minority shareholders while Frances Giblin is still living, without any consideration whatsoever to the trust. As a consequence, the trust would be divested of two major attributes of stock ownership: the right to vote the shares and the right to sell or otherwise dispose of the shares.[1]

The court further finds that the plaintiffs have not established a substantial likelihood that they will prevail on the merits on their claim seeking the equitable remedies of specific performance and injunctive relief. Even if the plaintiffs were to establish that the alleged option agreement is irrevocable, by the clear terms of the option itself it may not be exercised prior to the death of Frances Giblin.

■ While the plaintiffs may have arguable issues with regard to their claim based on the theory of anticipatory repudiation, the remedies available to the plaintiff for anticipatory breach do not include specific enforcement or injunctive relief. Under Kansas law, when a party repudiates a contract, the other party may treat such action as anticipatory breach and consequently rescind it. *See Wylie v. Marley Co.*, 891 F.2d 1463, 1471 (10th Cir.1989) (citing *Jinnings v. Amend*, 101 Kan. 130, 165 P. 845, 846 (1917)). However, the party treating repudiation as anticipatory breach may either (1) bring immediate suit for damages for breach of contract; (2) treat the contract as still binding and bring

---

1. If the trustees elect to sell or otherwise transfer the stock to a third party, the successor in interest would be subject to any rights now held by the bank holding company in the alleged option contract.

his action for breach after the time for performance has passed; or (3) rescind the contract and sue for money paid or value of services or property furnished. *Stauth v. Brown*, 241 Kan. 1, 734 P.2d 1063, 1070 (1987). Hence, even if the plaintiffs were to establish their claim for anticipatory breach, any remedy to which they might be entitled at this time would be limited to money damages.

Pursuant to Fed.R.Civ.P. 65(a)(2), the evidence presented by the parties at the hearing on the motion for preliminary injunction shall be part of the court record, and need not be repeated if this case should proceed to trial.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion for preliminary injunction (Doc. 15) is hereby denied.