No. 47,841

Roy L. and Evelyn L. Whiteley, *Appellants*, v. Clinton E. O'Dell, d/b/a O'Dell Construction Company, *Appellee.*

(548 P. 2d 798)

Opinion filed April 10, 1976.

*Frank W. Hylton,* of Wichita, argued the cause, and *Douglas K. Womack,* also of Wichita, was with him on the brief for the appellants.

No appearance by appellee.

The opinion of the court was delivered by

Owsley, J.: This is an action brought to recover damages for a breach of a real estate purchase contract. Plaintiffs appeal from the trial court's entry of judgment generally in favor of defendant contractor.

On April 16, 1973, plaintiffs Roy L. and Evelyn L. Whiteley entered into a written contract with defendant Clinton E. O'Dell for the purchase of a house in Wichita, Kansas. Under the terms of the contract, O'Dell, doing business as the O'Dell Construction Company, agreed to construct and convey to plaintiffs a house similar to another built by O'Dell. The contract price was listed at $31,040, with $1,000 to be paid as earnest money and the balance due upon closing. It further specified that the buyers were to apply for a conventional loan in the amount of $27,950, at a maximum interest rate of 7¾%. In the event the buyer was unable to qualify for such a loan, his earnest money was to be refunded. The closing date was designated as September 1, 1973, or a "reasonable time thereafter." On the back of the contract, and incorporated therein, were listed certain specifications to be followed by the contractor.

The Whiteleys subsequently obtained the requisite financing and paid O'Dell $1,000 in earnest money. Shortly thereafter, O'Dell commenced construction of the house, but he did not comply with certain contract specifications. Specifically, the first bathroom fixture placed in the "roughed in" bath area was white rather than

colored; sealdown shingles were used instead of T-lock shingles; and instead of an all brick exterior on the house, only the front was brick. The Whiteleys discovered these variances in June, 1973, and immediately notified O'Dell they no longer wanted to purchase the house. At that point O'Dell ceased further work on the house except for laying cement blocks to accommodate a brick veneer on the three unfinished sides. The parties met on several occasions following the Whiteleys' repudiation of the contract in an attempt to arrive at a mutually suitable solution. Failing to reach agreement, the Whiteleys filed a petition in the district court seeking damages for O'Dell's alleged breach of contract.

The Whiteleys' petition alleged that O'Dell refused, failed and neglected to carry out the terms of the contract, resulting in damages from increased expenses and other items in the total amount of $20,000. As a further result of the breach of the contract, the Whiteleys alleged they would be forced to finance similar housing at an increased rate of interest and they sought recovery of the $1,000 paid to O'Dell as earnest money.

In his answer, defendant O'Dell denied he breached the terms of the contract in any manner or that he was liable for any damages alleged by plaintiffs. By way of cross-petition O'Dell alleged he had fully performed the contract in a workmanlike manner and in accordance with the terms of the contract and all building codes, but the Whiteleys had wrongfully repudiated the contract. O'Dell prayed for relief in the form of specific performance of the contract, or, in the alternative, for damages in the amount of $10,000. In addition, O'Dell asked for whatever equitable relief the court felt was proper.

The case was tried before the trial court and the court issued its findings and conclusions of law. In ruling in favor of defendant O'Dell on the plaintiffs' petition, the court concluded that "time not being of the essence," the contractor had a reasonable time to complete the house according to specifications, but plaintiffs never gave him an opportunity to do so. The court reasoned that the variances noted by plaintiffs in June could easily have been rectified prior to the completion date of the contract. As a result, the court ruled that plaintiffs were premature in assuming the contract had been breached and the house would not be built according to specifications. In the words of the trial court, "The plaintiff's fears alone are not enough or sufficient to justify renouncing the contract even though real estate is a unique item."

Based on these findings the trial court entered judgment generally for defendant and against plaintiffs. The court directed plaintiffs to convey the property to defendant and ordered the $1,000 in earnest money returned to plaintiffs. Defendant's cross-petition for damages was denied.

Before reaching the merits of the controversy we should mention that we are deciding this case solely on the basis of the record, plaintiffs' brief, and plaintiffs' oral argument. Counsel for defendant has failed to file a brief with this court. Pursuant to Supreme Court Rule 10 (e) of appellate practice, counsel for defendant was not permitted to argue before this court. Hence, we will consider the appeal without the benefit of defendant's oral or written arguments.

Plaintiffs contend the trial court erred in finding defendant had not breached the contract. The record reveals that at the time plaintiffs inspected the house in June, 1973, there were variances from the contract specifications in at least three respects. First, the bathroom fixtures were not the color specified in the contract. The trial court determined this was an insignificant difference which could have been resolved rather simply. The fixtures had not been installed at that time. Although O'Dell made no offer to cure the defect we cannot say this alone would entitle the purchaser to rescind the contract. It is not every breach which gives rise to the right to rescind a contract. In order to warrant rescission of a contract the breach must be material and the failure to perform so substantial as to defeat the object of the parties in making the agreement. (*Kohn v. Babb,* 204 Kan. 245, 461 P. 2d 775; *In re Estate of Johnson,* 202 Kan. 684, 452 P. 2d 286.) Obviously, the variance in the appearance of the bathroom fixtures is not so substantial that it would constitute a material breach of contract.

The variances in the shingles and brick veneer are entirely different matters. While the sealdown shingles used by the builder differed only in appearance from those specified, the contract disclosed that plaintiffs specifically ordered T-lock shingles. Defendant offered no excuse for the variance, nor did he offer to replace them with the proper shingles. From the testimony it is apparent to this court that defendant had no intention of curing this defect. We find nothing in the record to support the finding of the trial court that the shingles could have been replaced before the date of closing.

An even more serious variance of the contract specifications was discovered by plaintiffs when they saw that brick veneer was added only to the front of the house. The contract specified the house was

to be all brick. The normal method of adding brick veneer to a house is to extend the foundation so a ledge is formed to support the brick veneer. O'Dell testified his employees had omitted the ledge on three sides of the house by mistake. When plaintiffs discovered the error they immediately notified defendant they were no longer going to buy the house. After learning of the plaintiffs' repudiation of the contract, defendant attempted to remedy the situation by laying cement blocks where the ledge should have been extended. Despite the fact the modification of the foundation was subsequently approved by the city building inspector as being structurally sound, there was considerable testimony indicating it was neither the normal nor the desired method for construction of a brick veneer. Plaintiff Roy Whiteley testified he did not feel the footings would support the weight of the bricks. A construction expert called by plaintiffs testified the use of this method to add a brick veneer could cause an unequal bearing on the footings and that if it were his house he would want the ledge poured with the foundation.

In addition to these defects in construction of the house, O'Dell admitted on cross-examination that he discovered a bow of almost two inches in the foundation. O'Dell attempted to correct the bow by building out the cement blocks at one end of the house. In spite of his efforts there was testimony from other witnesses that by so doing he only increased the amount of weight off center which the footings would have to support.

On the basis of this evidence we are inclined to agree with plaintiffs that there was a material breach of the contract at the time the defects were discovered. If it is clear that one party to a contract is going to be unable to perform it, the other party need not wait for the date when performance is due. He is entitled to treat the contract at an end and pursue his remedies. (11 Williston on Contracts, § 1308, p. 100; 17 Am. Jur. 2d, Contracts, § 506, p. 986; *Jinnings v. Amend,* 101 Kan. 130, 165 Pac. 845; *Brady v. Oliver,* 125 Tenn. 595, 147 S. W. 1135 [1911].)

Even though O'Dell negotiated with plaintiffs and offered to build them another house, he never offered to correct these variances. We do not view the use of cement blocks in place of a poured foundation to be an acceptable method of construction under the circumstances of this case. As a practical matter, we realize replacement of the shingles and proper construction of the ledge at this stage would be excessively expensive, if not impossible. There is

nothing in the record to support the conclusion of the trial court that plaintiffs were premature in their determination that the contract had been breached. After examining the whole of the contract and the expert testimony we are convinced that construction of the house in compliance with the named specifications was of importance to plaintiffs. Substantial variations such as shown herein obviously should entitle the purchaser to rescind the contract. In our opinion, the failure to include a ledge on three sides of the house and the use of the wrong shingles constituted a present material breach of the contract, and the trial court erred in its finding to the contrary.

Plaintiffs next contend the trial court erred in refusing to find they had a right to rescind the contract and to seek damages based on the breach of the contract. The trial court rescinded the contract, but it did not allow damages to either party. The earnest money was returned to plaintiffs and title to the property was restored to O'Dell. Regardless of which party breached the contract, rescission was an appropriate remedy and the trial court did not err in refusing to award damages to plaintiffs. Although plaintiffs' petition was based on a prayer for damages, it was within the inherent equitable power of the court to grant relief which would achieve justice and equity. (4 Corbin on Contracts, § 961, p. 864.) We are convinced the granting of rescission best suited the interests of justice under the facts before the court.

Ordinarily, a party's damages recoverable for breach of contract are limited to those which may fairly be considered as arising in the usual course of things from the breach itself, or as may reasonably be assumed to have been within the contemplation of the parties as the probable result of such a breach. (*Mahoney, Inc. v. Galokee Corporation,* 214 Kan. 754, 522 P. 2d 428; *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.,* 212 Kan. 730, 512 P. 2d 379.) In the instant case, plaintiffs sought damages for living expenses incurred, including the cost of meals, rent, laundry and driving expenses. In addition, they sought damages for loss of pay, loss of seniority and a decrease in vacation time. None of these items of alleged damage, however, could be said to have been within the contemplation of the parties. In any event, the action below was properly treated as one for rescission and the court did in effect rescind the contract. The parties were restored to their status quo. Under these circumstances it would have been inappropriate for the court to award damages to plaintiffs. Rescission operates to

extinguish the contract so that for all intents and purposes it never existed. It is generally held that a lawful rescission of a contract prevents recovery of damages for the breach. (17 Am. Jur. 2d, Contracts, § 516, p. 1002.)

In addition to their claim for damages, plaintiffs contend the trial court should have required O'Dell to assume the mortgage indebtedness or to insure that the mortgage company relieved them of any obligation. As a general rule, upon rescission of a contract the parties must be placed in substantially the same condition as when the contract was executed. (*Dreiling v. Home State Life Ins. Co.,* 213 Kan. 137, 515 P. 2d 757; 17 Am. Jur. 2d, Contracts, § 512, p. 994.) The trial court accomplished this by returning the earnest money and conveying title to O'Dell. Plaintiffs fail to demonstrate in what manner they are harmed by the existence of the mortgage since no funds have actually been advanced or loaned to them. On the basis of the record before us, we cannot say the trial court abused its discretion.

One final matter deserves attention. The trial court assessed the costs of the action below against plaintiffs. In view of our determination that it was defendant who wrongfully breached the contract, we believe the costs of the action should be borne by defendant. The order of the trial court is accordingly modified to assess the court costs against defendant.

Affirmed as modified.