(634 P.2d 166)
No. 52,333

M & W Development, Inc., *Appellee,* v. El Paso Water Company, Inc., *Appellant.*

Opinion filed October 2, 1981.

*Robert J. O'Connor,* of Hershberger, Patterson, Jones & Roth, of Wichita, for appellant.

*Jerry L. Griffith,* of Derby, for appellee.

Before Foth, C.J., Abbott and Swinehart, JJ.

Abbott, J.: The defendant, El Paso Water Company, Inc., (El Paso) appeals from a judgment against it for $151,826.07, contending the maximum judgment should be $19,707.89. The case involves the due date and manner in which the plaintiff, M & W Development, Inc. (M & W), may recover funds it advanced to El Paso to finance the extension of water lines in the city of Derby, Kansas. The total amount owing M & W is not in dispute.

M & W is a real estate developer active in the Derby, Kansas, area. El Paso is a privately owned water utility serving the City of Derby under a franchise granted by Derby. In order to finance the extension of water service to new developments within the franchised area, El Paso has for a number of years executed standard form contracts with the various real estate developers whereby a developer would advance funds to cover the costs of extending El Paso's distribution system into the area being developed. The contracts provided for repayment of the advancements pursuant to a formula that was based on whether the addition was developed in units or in its entirety, and on whether a certain percentage of connections had been completed in the unit. If the developer chose to develop the addition in its entirety, the money advanced by the developer would "mature for repayment" when 90 percent of the lots were occupied by water customers of El Paso. If the developer chose to develop the addition by units, the money advanced would mature for repayment at the rate of one-third when 40 percent of the total lots were developed and occupied by water customers; an additional one-third when 75 percent of the lots were so developed and occupied; and the remaining one-third when 90 percent of the lots were so developed and occupied.

Upon the occurrence of the particular event triggering the repayment obligation, two methods of repayment of the advances are provided for in the contract. The provision that applies when the obligation to repay the advancement matures is the subject of this appeal and states:

"(a) First Party [El Paso] will make, execute and deliver to Second Party [M & W] its promissory note or notes in amount or amounts equal to the sum of sums so advanced to First Party, bearing interest from the date of execution and delivery at the rate of 5% per annum, the principal and interest thereof becoming due and payable on a twenty-year amortized schedule with the first installment of interest and principal becoming due and payable sixty (60) days after the date thereof, and with semi-annual payments thereafter;
or

"(b) If First Party has funds from, or shall thereafter receive funds from, the issuance of any series of its first mortgage bonds to any mortgagee, it will then repay to Second Party the sum or sums advanced under and pursuant to the terms of this contract, and from time to time qualified for re-payment as in this Paragraph 4 provided, so long as funds from such source or sources remain available."

El Paso has used some version of the above clause in its contracts with developers since 1955; and prior to 1975, it had paid the advancements in full as they matured.

The trial court held that El Paso's failure to issue notes as provided for in that part of the contract set forth above constituted breach of contract; and, having failed to issue the notes, El Paso is not entitled to rely upon that provision of the contract pertaining to matured but unpaid advancements. The trial judge found that $112,279 had matured for repayment prior to commencement of the action. The attorneys agreed that additional amounts had matured prior to judgment and that the newly matured advancements should be included in the judgment; judgment was entered for M & W in the amount of $151,826.07. The trial judge also found that if he were in error concerning El Paso's right to issue notes for the outstanding balance, the sum due on the notes as of December 31, 1979, would be $19,707.85 without interest on past due payments.

El Paso contends that it did not breach its contracts with M & W; that its conduct did not constitute a material breach of its contracts with M & W; that any damages awarded in excess of $19,707.89 amounts to rewriting the contract between the parties and are excessive; and that the trial court erred in failing to find that M & W did not mitigate any of the damages that it might have sustained by reason of El Paso's conduct. M & W cross-appeals, arguing that the contracts are unconscionable, and therefore null and void; that its forbearance to exercise its right of repayment was consideration for El Paso's alleged agreement to pay cash plus a higher rate of interest; that El Paso waived its right to issue 20-year bonds in lieu of paying cash; and that it is entitled to punitive damages.

The record contains substantial competent evidence to support the trial judge's finding that El Paso breached the contract by not issuing notes to M & W. We cannot say, however, that a "material breach" justifying rescission of the contract has occurred, as was concluded by the trial judge. What justifies rescission of a contract was considered in *In re Estate of Johnson,* 202 Kan. 684, 691-92, 452 P.2d 286 (1969), wherein the Supreme Court commented:

"[T]he right to rescind a contract is extreme and does not necessarily arise from every breach. *To warrant rescission, the breach must be material and the failure to*

*perform so substantial as to defeat the object of the parties in making the agreement.* A breach which goes to only a part of the consideration, which is incidental and subordinate to the main purpose of a contract, does not warrant a rescission. (*Baron v. Lyman,* 136 Kan. 842, 18 P.2d 137; 17 Am. Jur. 2d, Contracts § 504; 17A C.J.S., Contracts § 422 [1]; Corbin on Contracts § 1104.)" (Emphasis supplied.)

Accord, *Whiteley v. O'Dell,* 219 Kan. 314, 548 P.2d 798 (1976).

Our Supreme Court has also held that failure of consideration, unless so great that it amounts to fraud, is not grounds for rescission of a contract; neither is the mere failure of a party to comply with terms of the contract. *Kohn v. Babb,* 204 Kan. 245, 250-51, 461 P.2d 775 (1969). Generally, upon rescission of contract the parties must be placed in substantially the same condition as they were in when the contract was executed. *E.g., Whiteley v. O'Dell,* 219 Kan. at 319. That obviously cannot be done in this case.

Except for payment by El Paso, the contract had been fully complied with. M & W advanced the money to El Paso to extend its water lines to the land being developed, and El Paso extended its lines and provided water service. The developed area became occupied and the only provision in the contract left to be performed was the repayment of the matured advancements to M & W. Thus, the contract is fully executed except for El Paso's promised repayment of the matured advances. There was no "material breach" of contract warranting rescission and the trial court erred in so holding.

Furthermore, the cardinal principle governing assessment of damages for breach of contract is that the injured party should be placed, so far as can be done by a money award, in the same position that he would have occupied if the contract had been performed. *Steel v. Eagle,* 207 Kan. 146, 151, 483 P.2d 1063 (1971); 22 Am. Jur. 2d, Damages § 47; 25 C.J.S., Damages § 71. A party is not generally entitled to be placed in a *better* position than full performance by the other party would have placed him. 22 Am. Jur. 2d, Damages § 47; 25 C.J.S., Damages § 71. Additionally, in *Steel,* at page 151, the court stated:

"[W]here a defaulting party fails to pay a sum of money as agreed under the terms of a contract, and he has received the consideration for which his promise was made, the measure of damages is, in the absence of special circumstances, the principal sum agreed to be paid with interest thereon from the time it was due. In such a situation the amount stipulated in the contract is *prima facie* the measure of recovery."

If El Paso had performed as provided for in the contract it would have repaid the advancement in cash if it had funds available from the issue of first mortgage bonds. The trial court found that El Paso had no such funds available and M & W does not challenge that finding on appeal. Furthermore, there is ample evidence in the record to support the finding. Thus, if El Paso had performed properly, it would have issued its promissory notes to M & W, bearing interest at either 5 percent or 7½ percent (depending upon the individual contracts, which provided for either 5 or 7½ percent), to be retired per a 20-year repayment schedule *or* when first mortgage bond money became available. If the notes had been issued, they would have generated principal and interest payments which the parties agree and the trial court found would have been in the amount of $19,707.89 as of December 31, 1979; and that is the proper amount of damages that should have been awarded M & W. Thus, the trial court erred in granting judgment for $151,826.07.

We turn now to M & W's cross-appeal. We believe M & W's argument that the contract is unconscionable is controlled by *Wille v. Southwestern Bell Tel. Co.,* 219 Kan. 755, 549 P.2d 903 (1976), wherein the court commented, at pages 759-60:

"The cases seem to support the view that there must be additional factors such as deceptive bargaining conduct as well as unequal bargaining power to render the contract between the parties unconscionable. In summary, the doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain."

Based on *Wille* and the record before us, we cannot say the trial court erred in finding the contract not unconscionable.

M & W next argues that El Paso "waived" its right to issue promissory notes. From our examination of the record, this issue appears to be raised for the first time on appeal. In any event it is without merit. Waiver has been defined as the voluntary and intentional relinquishment of a known right through some positive action or inaction inconsistent with that right. *Crestview Bowl, Inc. v. Womer Constr. Co.,* 225 Kan. 335, 341, 592 P.2d 74 (1979); *Prather v. Colorado Oil & Gas Corp.,* 218 Kan. 111, 117, 542 P.2d 297 (1975). M & W's president testified that El Paso

"threatened" to issue promissory notes in lieu of full payment; that evidence, coupled with the fact that the parties hereto continued to enter into identical contracts after the dispute over repayment arose, negates any contention that El Paso voluntarily and intentionally relinquished a known right.

The remaining issues have been examined and determined to be moot or without merit.

Reversed and remanded with directions to enter judgment for M & W in the amount of $19,707.89 plus interest on the unpaid installments from the date they would have become due had the notes been issued in accordance with the contract.