(271 P.3d 1277)
No. 104,935

STATE OF KANSAS, *Appellee*, v. JASON L. JONES, *Appellant*.

Opinion filed March 16, 2012.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Cheryl A. Marquardt*, assistant county attorney, *Todd L. Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., MCANANY and ATCHESON, JJ.

MCANANY, J.: Jason L. Jones' girlfriend left her 4-year-old son in Jones' care while she went to work. While in Jones' care, the child suffered a multitude of injuries which resulted in the child's

death. The blows to the child's body, which were characterized by a medical expert as an assault rather than an accident, resulted in the child's skull being fractured and his liver being torn in half.

Jones was charged with felony first-degree murder and abuse of a child. He entered into a plea agreement in which he agreed to plead guilty to second-degree reckless murder and abuse of a child in exchange for the State's agreement not to file a motion to terminate Jones' parental rights to his son and to recommend a downward durational departure to 360 months' imprisonment.

Before accepting Jones' pleas, the district court thoroughly described all of the rights that Jones would waive by pleading guilty and confirmed that Jones understood those rights. Jones expressed his satisfaction with defense counsel. The district court accepted Jones' guilty pleas and found him guilty.

After the plea hearing, but before sentencing, Jones informed the district judge that he wished to withdraw his pleas because he had been coerced by the State's threat to remove his son from the custody of Jones' parents. He also claimed the State had threatened to terminate his parental rights to his son if he did not plead guilty.

The State informed Jones that if he attempted to withdraw his pleas at sentencing, the State would consider the plea agreement to have been breached and the State would no longer consider itself bound to recommend a downward durational departure sentence.

Following a hearing on Jones' request, the court refused to permit Jones to withdraw his pleas. Jones requested a downward durational departure sentence. Contrary to the plea agreement, the State recommended that Jones be given the aggravated grid box sentences for his crimes and that they be served consecutively. The district judge stated that "without the recommendation by the State, I will not find that there [are] substantial and compelling reasons" for a downward departure. He sentenced Jones to a controlling sentence of 467 months' imprisonment.

Jones appeals the district court's decision denying his motion to withdraw his guilty pleas. He claims: (1) He was coerced into pleading guilty to avoid losing his parental rights and having his son

removed from his parents' care; and (2) the State violated the plea agreement by failing to recommend the agreed-upon sentence.

Jones had the burden of showing good cause to withdraw his pleas. K.S.A. 2010 Supp. 22-3210(d)(1). In ruling on the matter the district court had to consider whether Jones was represented by competent counsel; whether he was misled, coerced, mistreated, or unfairly taken advantage of; and whether Jones' plea was fairly and understandingly made. See *State v. Plotner*, 290 Kan. 774, 778, 235 P.3d 417 (2010). The court could consider any other factors bearing on the issue of whether good cause has been shown. *State v. Anderson*, 291 Kan. 849, Syl. ¶ 2, 249 P.3d 425 (2011). On appeal, Jones has the duty of establishing that the district court abused its discretion in denying his request. See *State v. Denmark-Wagner*, 292 Kan. 870, 875, 258 P.3d 960 (2011).

Jones claimed that the State put pressure on him by calling an emergency meeting regarding his son. But in fact it was Jones' attorney who called the emergency meeting regarding Jones' son, not the State. The district court was correct in determining that Jones' allegation that the State held an emergency hearing to remove his son from the home of the child's grandparents was not supported by the evidence.

Jones also argues his pleas were coerced by threats to terminate his parental rights to his son. As evidence he points to the plea agreement in which the State agreed not to file a motion to terminate Jones' parental rights to his son in exchange for Jones' pleas. But at the plea hearing, Jones failed to mention that he was under any type of coercion or pressure. In fact, when the district court asked Jones whether "anybody threatened you or pressured you in order to get you to plead today," Jones responded, "No. No, Your Honor." Jones expressed his satisfaction with defense counsel. Further, the district court made sure that Jones understood the rights he was waiving by entering a plea, and Jones has made no allegation that he did not understand his rights. Jones indicated that he wished to be sentenced as soon as possible.

Jones finds himself in circumstances similar to those of the defendant in *Wippel v. State*, 203 Kan. 207, 453 P.2d 43 (1969). There, the defendant alleged that he was pressured into pleading

guilty in part because the plea was made "with the understanding" that his sentence would be short enough that his children would not be placed in foster care. 203 Kan. at 209. In rejecting the defendant's claim that he was coerced into pleading guilty, the court concluded: "These personal considerations now being voiced by [defendant] may have been of some psychological influence on his decision to plead guilty; but personal considerations of this nature do not constitute the coercion required to vitiate an otherwise voluntary plea." 203 Kan. at 209.

Jones fails to demonstrate that the district court abused its discretion in finding no good cause to withdraw his pleas.

Next, Jones argues that the State breached the plea agreement by failing to recommend the agreed-upon departure sentence. The standard of review for evaluating an alleged breach of a plea agreement is de novo. *State v. Woodward*, 288 Kan. 297, 299-300, 202 P.3d 15 (2009). Jones argues that because of the State's breach, the agreement should be set aside and he should be allowed to withdraw his plea and proceed to trial.

As stated in *State v. Boley*, 279 Kan. 989, Syl. ¶ 1, 113 P.3d 248 (2005): "Application of fundamental contract principles is generally the best means to fair enforcement of a criminal plea agreement, although the constitutional implications of the plea bargaining process may require a different analysis in some cases." The right to rescind a contract and thereby to be discharged of contractual duties does not arise from every breach. See *In re Estate of Johnson*, 202 Kan. 684, 691-92, 452 P.2d 286, *modified on other grounds* 203 Kan. 262, 452 P.2d 286 (1969). Quoting *Johnson*, 202 Kan. at 691-92, the court in *City of Shawnee, Kan. v. AT&T Corp*, 910 F. Supp. 1546, 1553 (D. Kan. 1995), stated:

" '[T]he breach of contract must be material and the failure to perform so substantial as to defeat the object of the parties in making the agreement. A breach which goes to only a part of the consideration, which is incidental and subordinate to the main purpose of the contract, does not warrant a rescission.' "

The State had three primary considerations that were the basis of its decision to enter into the plea agreement: (1) Jones must admit guilt for his crimes, (2) the pleas must provide resolution

and justice for the victim and his family, and (3) the pleas must protect Jones' son from having to testify. Jones' 11-year-old son apparently witnessed his father beating the 4-year-old child. The State argues that by Jones seeking to withdraw his plea, "[e]very tenet of the plea agreement that was bargained for by the State . . . was violated." Thus, the State contends, Jones breached the agreement. But, as noted earlier, not every breach permits a rescission.

The State also argues, in essence, that there has been a frustration of purpose when it argues that "there is an implied condition in the plea agreement that the circumstances surrounding the agreement will remain substantially the same and that if there is a change then it is sufficient to relieve the State of its obligation under the plea agreement." In Syllabus ¶ 3 and ¶ 4 of *Boley*, the court states:

"Where, after a contract is made, a party's principal purpose is substantially frustrated without the party's fault by the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made, the party's remaining duties to render performance are discharged unless the language or the circumstances indicate otherwise."

"The Restatement (Second) of Contracts § 265 (1979) sets out the requirements which must be met in order for a party's contractual duties to be relieved under the frustration of purpose doctrine. First, the purpose that is frustrated must have been a principal purpose of that party in making the contract. Second, the frustration must be so severe that it is not fairly to be regarded as within the risks assumed under the contract. Third, the nonoccurrence of the frustrating event must have been a basic assumption on which the contract was made." 279 Kan. 989, Syl. ¶¶ 3 and 4.

Thus, under either the breach of contract theory or the frustration of purpose theory, we must examine whether the breach or change in circumstances so undermined the contract as to excuse the State from its obligation to perform.

Jones acted to intentionally breach the contract and to relieve himself of all obligations under it. If he had his way, each of the State's objectives in entering into the plea agreement would have been frustrated. Jones would not admit his guilt. The matter would not be resolved for the victim and his family. Jones' son would have to testify against his father when the case went to trial.

But Jones did not have his way. The ruling of the court on Jones' motion prevented Jones from withdrawing his plea and undermining the objectives of the State in entering into the plea agreement. Jones' earlier admission of guilt remained; the victim and his family obtained the resolution they sought; and Jones' young son was freed from the prospect of having to testify against his father. In keeping with *In re Estate of Johnson,* and despite Jones' best efforts, Jones' breach was not "so substantial as to defeat the object of the parties in making the agreement." 202 Kan. at 691. And in keeping with *Boley,* the purpose of the contract was not frustrated by Jones' actions, again despite his efforts to do so. Thus, the State improperly recommended a sentence contrary to the plea agreement, and the recommendation apparently affected the court in view of the sentencing judge's statement that "without the recommendation by the State, I will not find that there [are] substantial and compelling reasons" for a downward departure.

Jones argues that this breach of the plea agreement by the State warrants setting aside his guilty pleas and remanding the case for trial. He relies on *Woodward* for the proposition: "If the State fails to perform its obligations under the bargained plea agreement, then the court must decide whether justice requires that the promise be fulfilled or whether the defendant should have the opportunity to withdraw his or her plea." 288 Kan. 297, Syl. ¶ 2.

We note that in *Woodward* the court found that the State did not breach the plea agreement, so the court did not have to analyze whether withdrawal of the plea would be an appropriate remedy. In Jones' case, we have already determined that his pleas were freely and knowingly entered. The disruption that followed was entirely of Jones' making. Jones' substantial breach of the agreement and the frustration of the State's purpose for entering into it remained real considerations up to the moment the court denied Jones' motion. Having denied Jones' motion to withdraw his plea, the court proceeded immediately to sentencing. Had the State had a few minutes to analyze the effect of the court's ruling on the motion, it could have determined that the legal principle of "no harm, no foul" may have come into play. But that did not happen. We attribute the motivating force for the State's error to be Jones

himself. Justice would not be served by permitting Jones to now profit from his unsuccessful effort to frustrate the purpose of his plea agreement by setting aside the plea agreement for the State's breach. Accordingly, Jones' sentence should be vacated and the case should be remanded for resentencing with the State recommending the sentence it agreed to in the plea agreement.

Affirmed in part, sentence vacated, and case remanded with instructions for resentencing.