NOT DESIGNATED FOR PUBLICATION

No. 113,347

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF HIAWATHA, KANSAS,
*Appellee*,

v.

RURAL WATER DISTRICT NO. 2,
BROWN COUNTY, KANSAS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Brown District Court; JAMES A. PATTON, judge. Opinion filed December 4, 2015. Affirmed.

*William C. O'Keefe*, of O'Keefe Law Office, of Seneca, for appellant.

*Arthur E. Palmer*, of Goodell Stratton Edmonds & Palmer LLP, of Topeka, for appellee.

Before POWELL, P.J., PIERRON and LEBEN, JJ.

*Per Curiam*: In 1991, the City of Hiawatha contracted to sell water for 40 years to Rural Water District No. 2 in Brown County, Kansas; the District would then resell the water to its own customers. In 2012, the City sued the District for breach of contract for selling water to people outside the District's geographic boundaries. The district court held that selling water outside the boundaries violated the contract, so the City was entitled to terminate it.

The District has appealed on several grounds. The City contends that the District's appeal should be dismissed without considering the merits because the District has complied with the judgment and didn't come up with the money it needed to put that judgment on hold while the case was on appeal. But the court will only dismiss a party's appeal if the party has voluntarily complied with the judgment. Because the District's compliance has not been voluntary and unconditional, we will not dismiss its appeal.

On the merits, however, we do not find that any of the District's arguments succeed:

- First, the District argues that because the amount of water it sold outside the boundaries was minimal, it didn't substantially violate the contract. But the terms of the contract provided that any selling outside the boundaries would be grounds to terminate the contract. The district court properly determined that the District's actions entitled the City to cancel the contract.

- Second, the District challenges the court's consideration of a supplemental agreement. The District initially admitted that the document was part of the contract in its pleadings but later concluded that it hadn't signed it as no copy with a District signature was found. But the District never sought to correct its pleadings, and parties to a lawsuit are bound by their admissions in the pleadings.

- Third, the District argues that the district court wrongly rejected its affirmative defenses of waiver, laches, the statute of limitations, and equitable estoppel. But the district court properly considered the evidence and arguments presented by the District and did not err in rejecting them.

We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 1991, the City and the District contracted for the District to buy water from the City to resell to its own customers.

The District is organized as a rural water district under K.S.A. 2014 Supp. 82a-612 to 82a-650. To form a rural water district, at least 50% of landowners in the proposed district must petition the board of county commissioners. K.S.A. 82a-614. The petition should define the boundaries of the proposed district and state that the land within those boundaries does not have adequate water, that construction of a water system is necessary to improve the community, and that those improvements would "promote the public health, convenience and welfare." K.S.A. 82a-614. The board of county commissioners then holds a hearing; if it finds that proper notice of the hearing was given and that the assertions in the petition are true, it establishes the rural water district and defines its boundaries. K.S.A. 82a-616. Each district's set geographical boundaries may be expanded by petitioning the board of county commissioners. K.S.A. 82a-622 and 82a-623. Although no Kansas statute specifically prohibits a rural water district from selling water outside its boundaries, no statute authorizes it, either, and agencies created by statute generally have only the authority granted by statute. The United States Court of Appeals for the Tenth Circuit has concluded that the statutory scheme doesn't permit a district to sell water to customers outside its boundaries. *Rural Water Dist. No. 4 v. City of Eudora, Kan.*, 659 F.3d 969, 983 (10th Cir. 2011). The court noted the "clear association between a water district's geographic boundaries and those laws pertaining to its corporate governance, facilities, and operations." 659 F.3d at 983.

In October 2012, the City sued the District for breach of contract because the District had sold water outside its geographic boundaries. In its answer, the District admitted to serving people outside its boundaries but denied that it had breached the

3

contract or that the City was entitled to cancel the contract. The District serves about 25 customers outside its boundaries.

The key documents in this case are the original sales agreement, the First Supplemental Agreement dated December 2, 1991, and the Second Supplemental Agreement dated March 4, 1996. Each had somewhat different provisions regarding the District's ability to sell water outside its boundaries.

Paragraph 8 of the original sales agreement provided that the District would sell only to customers in identified cities "included in or attached to" the District but that if the District asked to add others, the City could not "unreasonably" withhold approval:

> "The City recognizes the fact that the cities of Morrill, Willis, Powhattan, Robinson and Everest are included in or attached to the boundaries of the District and the District has a right to sell water to these cities at a wholesale rate. The District agrees not to sell water outside District's area to an[]y other District or City without the consent of the City. This consent will not be unreasonably withheld."

The First Supplemental Agreement amended that paragraph to further identify specifically where the District could sell water outside its boundaries, and it provided that the District would not otherwise sell water outside the District without the City's consent:

> "The City recognizes the fact that the cities of Morrill, Willis, Powhattan, Robinson, and Everest are included in or attached to the boundaries of the district and that the district has the right to sell water at wholesale rates. The cities of Morrill and Willis in Brown County, Kansas, have refused water from the District and are eliminated from being cities that the District can henceforth sell water to. The City of Hiawatha does recognize the right of the District to sell water to Rural Water District No. 1 of Doniphan County, Kansas, which serves only the City of Leona, Kansas, and this extension out of Brown County to the City of Leona is only to attach to Rural Water District No. 1, Doniphan County, Kansas, for the purpose of serving residential use and for no other purposes . . . .

4

The City of Hiawatha hereby consents to that sale. The City of Hiawatha further consents that the rural water district may sell to Powhattan, Robinson, and Everest. The District agrees not to sell water outside the District's area to any other district or city without the consent of the City of Hiawatha. In the event that said District does violate this term then the City of Hiawatha may terminate this contract immediately."

The First Supplemental Agreement no longer provided that the City could not unreasonably withhold its consent, and the agreement now provided that the City could immediately terminate the agreement if the District sold water outside its borders without the City's permission.

The Second Supplemental Agreement amended paragraph 8 again by deleting the last two sentences of the language above and adding the following subparagraphs:

"(B). The City hereby consents that the District may sell water to the Kickapoo Tribe in Kansas, which is located outside of the District . . . .

"(C). The District agrees not to sell water outside the District's area to any other district, city, tribe, or other user of water without the consent of the City of Hiawatha. In the event that said District does violate this term, then the City of Hiawatha may terminate the contract immediately."

Thus, the Second Supplemental Agreement, like its predecessor, listed those to whom the District could sell water outside its borders, provided that the District not sell water outside its borders "to any other . . . user of water without the consent of the City" and provided that the City could terminate the contract immediately if the District violated these provisions.

The parties dispute whether the Second Supplemental Agreement is a valid part of the contract. The District initially agreed that it was in its answer to the City's petition. In response to a written question from the City, Chairman of the Board of the District,

5

Douglas Spellmeier, also stated that the parties had agreed to the Second Supplemental Agreement but noted that the District had long served individuals outside its boundaries and "never gave it any thought that the [City] would hold it against the [District] by adding those single families to the district so they can have rural water."

Later, the District denied ever having signed or agreed to the Second Supplemental Agreement. It took this position in its reply to the City's Motion for Summary Judgment. According to the District, it never signed the agreement because the Kickapoo tribe withdrew its request for water service. The Second Supplemental Agreement was not admitted into evidence by either party at trial, and neither referenced it in the proposed findings of law and fact submitted to the district court.

A bench trial was held on September 15, 2014. The City first called Teresa Olson, bookkeeper for the District, to testify. Olson testified that the District had been expanded once in 1994 and that customers had subsequently been added outside the boundaries. She stated that as far as she knew, the District had never provided the county commission with updated service-area maps, nor had it ever provided the City with a list of customers served outside the district. She also testified that the City had never asked or contacted the District about customers outside the district until it filed the lawsuit. According to Olson, at least some of the customers outside the district boundaries had been signed up for service since 1991, but others were added later—as recently as 2013, after the lawsuit was filed.

The City also called Michael Parrish Nichols, City Administrator for Hiawatha. Nichols testified that the percentage of the City's water used by the District had increased from 22% in 1997 to 38% in the first 8 months of 2014. Nichols stated that the City had not increased the total water produced and that the City's population had decreased by 13% from 1991 to 2013. He further testified that the additional water used by the District stresses the City's water system and that the water was being sold to the District under the

6

contract at a loss. Nichols was not aware that the contract limited the amount of water that the District could require from the City.

The District then called its manager, Harold Keller, to testify. Keller estimated that customers outside the district boundaries used approximately 60,000 to 70,000 gallons of the 6 to 7 million total gallons the District purchased each month. Keller testified that, like Olson, he had never been asked whether the District was serving customers outside its boundaries, nor had he ever informed the City of the matter.

The district court issued a 13-page written decision on January 21, 2015. It found that the District had violated the contract by serving people outside its boundaries and that the City could cancel the contract. The district court referred to the Second Supplemental Agreement as part of the contract between the parties. The court also held that the City had no duty to investigate whether the District was selling outside the boundaries and that nothing in the record would have made the City aware of the sales. The court said that the District had violated its duty of good faith because it had not informed the City that it was serving people outside its boundaries.

The District requested either a new trial or that the district court amend or alter its judgment. The District objected to the district court's consideration of the Second Supplemental Agreement, arguing that it had never signed nor agreed to that supplement. It also argued that the district court had used an incorrect figure of how many people it served outside the district. The district court denied the motion after a hearing in March 2015.

On February 3, 2015, after the court's decision but before the motion hearing, the City notified the District that it would be terminating the contract on February 9, 2015. On February 17, the District requested that the district court stay its decision—or put it on hold—and set a bond if necessary as part of that process. The district court ruled that the

7

District could obtain a stay of its order pending appeal if the District posted a $175,000 bond, which would protect the City against the possibility that the District's appeal did not succeed. The District did not post a $175,000 bond, and the district court's ruling was not stayed pending appeal.

We turn next to the issues raised on appeal.

*I. The District Did Not Lose Its Right to Appeal by Acquiescing in the District Court's Judgment.*

The City argues that the District has acquiesced, or voluntarily complied, with the district court's judgment by paying the standard water rate of $3.58 per 1,000 gallons after the City cancelled the contract. Previously, under the contract, the City had charged only $1.29 per 1,000 gallons. The District had to pay the higher rate because it did not file the bond that would have stayed the district court's order pending appeal.

The City argues that the District has waived its appeal by voluntarily complying with the judgment and that our court has no jurisdiction to consider the appeal. The District admits that it has not posted a bond to stay the judgment but argues that it did not have the money to do so. The District contends that it hasn't acquiesced because it filed posttrial motions and has appealed the district court's decision.

The acquiescence doctrine establishes that a party who voluntarily accepts the benefits or burdens of a judgment loses the right to appeal it. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006); *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012), *rev. denied* 298 Kan. 1208 (2013). But acquiescence should be found only when the party's actions "'clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary and absolute acquiescence. [Citation omitted.]'"

8

*Uhlmann*, 48 Kan. App. 2d at 17. Whether a party's payment is voluntary depends on whether the facts in the case suggest that the party intends to waive its legal rights. *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 497, 866 P.2d 1044 (1994); *Younger v. Mitchell*, 245 Kan. 204, 209, 777 P.2d 789 (1989).

Under K.S.A. 2014 Supp. 60-2103(d), if one party wants to prevent another party from enforcing the judgment while it appeals, it must ask the court to set what's known as a supersedeas bond. Here, the District requested the court to set a bond but did not pay—apparently for lack of funds—the $175,000 bond the court set. Despite the City's suggestions to the contrary, merely failing to post the bond does not mean the District has acquiesced.

In considering the facts, it does not appear that the District voluntarily accepted the burdens of the judgment or intended to waive its legal rights. Water service is essential, not optional. See *Dedeke v. Rural Water Dist. No. 5*, 229 Kan. 242, 249, 623 P.2d 1324 (1981) (requiring rural water districts to give customers notice and opportunity to challenge termination of service). Thus, since the District does not have another source of water, it had no choice but to pay the higher rate required to continue providing water to its customers. Providing service to its customers—at the core of its statutory and contractual duties— should not result in an implied waiver of the right to appeal. See *Uhlmann*, 48 Kan. App. 2d at 14. To protect its interest in providing water to its customers, the District had to pay the higher water rate. Meanwhile, the District did all that it was legally and financially able to do: It filed posttrial motions and requested a stay of judgment pending appeal. In these circumstances, paying the higher water rate doesn't clearly and unconditionally establish that it intended to waive its legal rights. We conclude that the District did not acquiesce in the judgment, and we proceed to consider the issues the District has raised.

II. *The District Court Properly Determined That the District Breached the Contract.*

The District raises several issues, but we will start with whether it breached the contract. If not, we need not address other issues.

The District characterizes the issue as whether the City presented sufficient evidence to show a breach of the contract, but it then discusses the district court's failure to make certain findings, its refusal to reconsider the matter or grant a new trial, and its determination that the District materially breached the contract (meaning that it violated the contract in a significant way). The District essentially argues that the district court erred in (1) failing to make findings regarding the number of households served, the amount of water used outside the district, and the amount of water that the District could get from the City, (2) refusing to reconsider its findings that the District acted in bad faith and that the City was under no obligation to investigate, (3) denying the motion for a new trial, and (4) finding that the District materially breached the contract.

To determine whether a party has breached a contract, the court must first consider what the contract required. We have unlimited review of the interpretation and legal effect of a written contract, so regardless of how the district court read it, we must interpret the contract and determine its legal effect independently. *Heartland Surgical Specialty Hospital v. Reed*, 48 Kan. App. 2d 237, 242, 287 P.3d 933 (2012) (citing *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900-01, 220 P.3d 333 [2009]). In interpreting written contracts, the primary rule is to determine the parties' intent; if the terms of the contract are clear, a court determines the intent of the parties from the language of the contract without applying rules of construction. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013). When interpreting contractual provisions, the entire contract should be considered as a whole rather than isolating any one sentence or provision. *Wichita Clinic v. Louis*, 39

Kan. App. 2d 848, 853, 185 P.3d 946, *rev. denied* 287 Kan. 769 (2008). When the contract consists of two or more documents, we interpret the documents together to determine the parties' intent. *Hollenbeck v. Household Bank*, 250 Kan. 747, 752, 829 P.2d 903 (1992).

The original sales agreement provided that the District "will serve customers of the District system as [shown] by its plans of the system now on file in [its] office." The original agreement and First Supplemental Agreement expressly prohibited the District from selling water outside the District's area to any other district or city without the City's consent—but it also provided that the City would not unreasonably withhold consent. The First Supplemental Agreement eliminated that restriction on the City (that it not unreasonably withhold consent) and restricted the District's ability to sell water even to some cities *within* its boundaries. At this point, the District did not have an unrestricted power to sell water. (The First Supplemental Agreement also changed the terms to allow the City to cancel the contract immediately if the District didn't comply with these provisions on reselling water.)

The Second Supplemental Agreement further illustrates the parties' intent that the District would only serve customers within its boundaries. This agreement expressly prohibited the District from selling water outside its boundaries "to any other district, city, tribe, or other user of water" without the City's consent. It also reiterated that if the District violated the term, then the City could immediately cancel the contract. As discussed in more detail in the next section of our opinion, the district court could consider this supplement to be part of the agreement because the District admitted that it was a valid part of the contract in its pleadings. Taken together, the original sales agreement, the First Supplemental Agreement, and the Second Supplemental Agreement show that the parties intended for the District to serve only authorized cities and customers within its boundaries.

11

Having determined that the contract prohibited the District from selling water outside its boundaries without advance consent, we next consider whether the District's actions constituted a material breach. A breach of contract occurs when a party fails to perform "'a duty arising under or imposed by agreement.'" *Daggett v. Board of Public Utilities*, 46 Kan. App. 2d 513, 515, 263 P.3d 847 (2011) (quoting *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374, 552 P.2d 885 [1976]), *rev. denied* 294 Kan. 943 (2012). Even if a party breaches a contract, the other party has a right to cancel the contract only if it was a material breach. *M & W Development, Inc. v. El Paso Water Co.*, 6 Kan. App. 2d 735, 737-38, 634 P.2d 166 (1981).

A breach is material when the violation is so substantial that it defeats the parties' purpose for making the agreement. *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, 313, 856 P.2d 111 (1993); *State v. Jones*, 47 Kan. App. 2d 109, Syl. ¶ 4, 271 P.3d 1277 (2012), *rev. denied* 297 Kan. 1251 (2013). Put another way, a material breach causes a party to receive something substantially less or different than he or she bargained for. *First Nat'l Bank of Omaha v. Centennial Park*, 48 Kan. App. 2d 714, 725, 303 P.3d 705, *rev. denied* 297 Kan. 1244 (2013). Whether a contract has been materially breached is a question of fact, so on this point we must determine whether substantial evidence supports the district court's finding of a material breach. *Waste Connections*, 296 Kan. at 964; *M & W Development*, 6 Kan. App. 2d at 737 (1981). Substantial evidence is legal and relevant evidence that a reasonable person could accept as sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014).

A party's breach is not material if he or she has substantially performed according to the terms of the contract. *Dexter v. Brake*, 46 Kan. App. 2d 1020, 1033-34, 269 P.3d 846 (2012). Under the doctrine of substantial performance, a party's performance may be considered complete if the essential purpose of the contract is accomplished and the party "made a good-faith attempt to comply with the terms of the agreement even though he or she fails to precisely meet the terms of the agreement." 46 Kan. App. 2d 1020, Syl. ¶ 2.

12

But substantial performance doesn't apply if the parties, by the terms of their agreement, make it clear that only complete performance will fulfill the contract. 46 Kan. App. 2d at 1033.

In this case, the main purpose of the contract was for the City to provide water to the District to resell to its customers within its approved boundaries. By selling to customers outside its boundaries, the District breached the contract. The District contends that even if it breached the contract, it was not a material breach that justifies allowing the City to break its agreement because the amount of water used and the number of customers served outside its boundaries was a very small portion of its total usage and customers. But the District can't argue that it substantially complied with the contract's terms because the terms explicitly warned that selling water outside the boundaries without the City's consent would be grounds for *immediately cancelling the contract*.

The District also argues that it provided water only to customers who would otherwise be without. But "[a] breach is a breach is a breach, even if it occurs with the best of intentions." *Waste Connections*, 296 Kan. at 974. The District failed to get the necessary consent from the City or even inform the City that it was serving customers outside its boundaries. In finding a material breach, the district court also noted that the District's use of water had increased and that it had continued to expand its customer base outside its boundaries. Because the City sold the water to the District at a loss, any amount of water sold outside the District's boundaries harmed the City. Substantial evidence supports the district court's determination that the District materially breached the contract.

The District also argues that the district court should have made findings about the extent of the breach, such as how many customers were served or how much water they consumed. But the court determined that the District materially breached the contract by selling *any* amount of water outside the district without consent; it wasn't necessary for

13

the court to make specific findings. The district court acknowledged the District's argument that the sales outside the boundaries "are of such little consequence" compared to its overall consumption but ultimately rejected this reasoning. We agree with the district court that the contract prohibited *any* sales outside the District's boundaries without the City's consent, and any sale so made was a material breach.

The District also asserts that the district court should have reconsidered its finding that the District acted in bad faith and that the City had no obligation to investigate. Kansas recognizes the duty of good faith and fair dealing in all contracts, except employment-at-will contracts. *Estate of Draper v. Bank of America, N.A.*, 288 Kan. 510, 525, 205 P.3d 698 (2009). The duty of good faith and fair dealing requires that parties "refrain from intentionally doing anything to prevent the other party from carrying out his or her part of the agreement or from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *First National Bank*, 48 Kan. App. 2d 714, Syl. ¶ 17. Whether a party met the good-faith standard is a question of fact. 48 Kan. App. 2d at 729. We will not disturb the district court's determination of good faith and fair dealing if it is supported by substantial evidence. *Bank of America, N.A. v. Narula*, 46 Kan. App. 2d 142, 170, 261 P.3d 898 (2011).

The district court rejected the District's argument that the City had a duty to investigate and found that the District acted in bad faith by not disclosing that it was serving customers outside the boundaries. It noted that because the District was created by statute, the City could reasonably presume that the District complied with the laws and served customers only within the geographical area set by the county commissioners. Nothing in the contract required that the City investigate the District's activities. And no evidence presented at or before trial showed that the City knew or should have known about the outside sales.

14

If the City had known facts that put it on notice of the outside sales, then it would have had a duty to investigate. See *Vanier v. Ponsoldt*, 251 Kan. 88, 108, 833 P.2d 949 (1992). But the only evidence of the City's knowledge was offered after the trial, and the district court wasn't required to accept it and reconsider the matter. The District asserts that it didn't act in bad faith because its actions didn't prevent the City from carrying out the contract. But the duty of good faith and fair dealing also requires not injuring the other party's right to benefit from the contract. Because the water was sold below cost, any unauthorized users harmed the City. Substantial evidence supports the district court's determination that the District violated its duty of good faith and fair dealing by failing to disclose the outside sales.

The District also argues that the district court should have granted its motion for a new trial or to amend or alter its judgment. The decision to grant a motion for a new trial is a matter of discretion for the district court. *State v. Fulton*, 292 Kan. 642, 648, 256 P.3d 838 (2011). Under the abuse-of-discretion standard, we do not disturb a discretionary decision unless no reasonable person would have made the same decision or the decision was based on an error of law or fact. *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 740, 334 P.3d 830 (2014). The decision to grant a motion to alter or amend a judgment is similarly a matter of discretion subject to the abuse-of-discretion standard. *Miller v. Johnson*, 295 Kan. 636, 677, 289 P.3d 1098 (2012).

Under K.S.A. 2014 Supp. 60-259, a court may grant a new trial on several different grounds. The parties agree that the District's request for a new trial is based on newly discovered evidence. To gain a new trial on this basis, a party must establish that (1) the new evidence could not reasonably have been produced at trial and (2) there is a reasonable probability that the new evidence would produce a different result. See, *e.g.*, *Sims v. Schrepel*, 208 Kan. 527, 530, 492 P.2d 1312 (1972); *Crone v. Nuss*, 46 Kan. App. 2d 436, 450, 263 P.3d 809 (2011), *rev. denied* 294 Kan. 943 (2012). If the party fails to establish these facts, the trial court does not abuse its discretion in refusing to consider

15

the new evidence or grant a new trial. *Schraft v. Leis*, 236 Kan. 28, 40, 686 P.2d 865 (1984).

Before the trial, the only evidence the District presented to show that the Second Supplemental Agreement was unsigned was an affidavit, and it offered no proof that the City was aware that the District was serving people outside its boundaries. But in its posttrial motions, the District suddenly offered up letters addressing the Kickapoo Tribe's rejection of the contract to show that the District did not agree to the Second Supplemental Agreement and a letter from the City's lawyer threatening legal action if the District served customers outside its boundaries. Both Olson, the District's bookkeeper, and the District's attorney admitted that those letters were available to them before the trial. Olson explained that she had had many documents to go through, and the attorney stated he hadn't thought it was necessary to present them at trial. As the district court stated, "Accepting th[at] Rural Water had many records, that does not establish that they could not have with reasonable diligence produced the evidence at trial. They chose a trial strategy and didn't present those documents . . . ." The district court did not abuse its discretion in denying the motion for a new trial or to alter or amend its judgment.

III. *The District Court Did Not Err in Considering the Second Supplemental Agreement.*

The District next argues that the district court should not have considered or relied on the Second Supplemental Agreement in determining whether the District breached the contract. The District admits that it initially accepted that the Second Supplemental Agreement was part of the contract but argues that it later noticed the contract was unsigned and corrected the mistake in its reply to the City's motion for summary judgment, so the court should not have considered or relied on the document. The District also notes that the Second Supplemental Agreement was not admitted into evidence at trial. The City responds that the district court had the right to rely on the pleadings and the written answer from the District chairman admitting validity of the supplement

16

because the District never attempted to amend its answers or modify the admission through the pretrial order.

Whether a term of a written contract has been modified by a later agreement is a question of fact for the trial court. *Douglas Landscape & Design, L.L.C. v. Miles*, 51 Kan. App. 2d 779, ___, 355 P.3d 700, 707 (2015) (citing *Belger Cartage Serv., Inc. v. Holland Constr. Co.*, 224 Kan. 320, 330, 582 P.2d 1111 [1978]). This court should uphold the district court's decision if it is supported by substantial evidence. See *Belger*, 224 Kan. at 330-31.

Usually "a party is bound by allegations or admissions of fact in his or her own pleadings." 28 Am. Jur. 2d, Estoppel and Waiver § 71. Not only are they binding, "[a]dmissions in a pleading have the effect of withdrawing a fact from issue and eliminating the necessity of proof relating to the fact so admitted. Furthermore, factual allegations contained in pleadings on which the cause is tried are irrefutable as long as they remain in the case . . . ." 32 C.J.S., Evidence § 628. The Kansas Supreme Court has likewise said: "As a general rule parties to an action are bound by their pleadings and judicial declarations and are estopped to deny or contradict them where the other parties to the action relied thereon and changed their position by reason thereof." *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241, Syl. ¶ 4, 662 P.2d 1195 (1983), *disapproved of on other grounds by Wichita Sheet Metal Supply, Inc. v. Dahlstrom & Ferrell Const. Co.*, 246 Kan. 557, 792 P.2d 1043 (1990).

In denying the District's motion for a new trial or to alter or amend judgment, the district court addressed the Second Supplemental Agreement:

"Nothing in the evidence shows that the Rural Water District 2 notified the city that it had not signed the second Supplemental Contract. The silence created the appearance and belief that the contract was in fact in force and was being acted upon by both parties. The

17

Rural Water District believed that it was binding and in [e]ffect until a late search of their records indicated that it was not signed. By then both the attorney for the defendant and the president or chairman of the board had both said that this was a binding and effective agreement.

"Even if the contract was not signed, it was certainly followed and it was one of the terms that the city of course had to use in its dealings with the Rural Water District. The violation was the reselling of water outside of the geographical boundaries. . . . The defendants did not seek to amend the answer to the petition, which admitted the existence of the second Supplemental Agreement. The defendant did not seek to amend the sworn answers to interrogatories admitting the validity of the agreement. The defendant did not seek a motion to conform its pleadings to the evidence adduced at trial."

The district court is correct that the District never attempted to amend its answers to the petition or the City's written questions; nor did it take any other action to correct the error in its pleadings. The District did not request at trial that the district court determine whether the Second Supplemental Agreement was properly part of the contract, and it did not present any evidence of the matter at trial. Because the District never amended its pleadings, the district court was permitted to treat the admission made in the District's answer as a fact and to consider the Second Supplemental Agreement as part of the contract.

IV. *The District Court Did Not Err in Rejecting the District's Affirmative Defenses.*

The District's final argument is that the district court incorrectly rejected four defenses it presented to argue that the City could not cancel the contract even if the District had violated it: waiver, laches, statute of limitations, and estoppel. Each of those defenses—called "affirmative" defenses—will be addressed separately below.

First, the District asserts the court should have accepted its waiver defense because the City knew that the District was selling water outside the boundaries and waived its right to cancel the contract. Waiver occurs when a party intentionally and voluntarily gives up a known claim or right. *Lyons ex rel. Lawing v. Holder*, 38 Kan. App. 2d 131, 138, 163 P.3d 343 (2007). Waiver applies only when a party has taken some absolute action or inaction inconsistent with the claim or right. *Falkner v. Colony Woods Homes Ass'n*, 40 Kan. App. 2d 349, 360, 198 P.3d 152 (2008) (quoting *Proctor Trust Co. v. Neihart*, 130 Kan. 698, 705, 288 Pac. 574 [1930]). Both knowledge and intent are essential elements of a waiver, but intent may be inferred from a party's conduct, and knowledge may refer to what the party should have known. *Sultani v. Bungard*, 35 Kan. App. 2d 495, 498, 131 P.3d 1264 (2006). Because waiver is an affirmative defense, the District had the burden to show that the City waived its claim. See *Smith v. Oliver Heights, LLC*, 49 Kan. App. 2d 384, 392, 311 P.3d 1139 (2013). Whether or not a party has waived its claim is a question of fact. *Foundation Property Investments v. CTP*, 286 Kan. 597, 610, 186 P.3d 766 (2008).

In rejecting the District's defense, the district court found that the District's silence about the sales prevented the City from learning about them; without that knowledge, the City could not waive its right to cancel the contract. On appeal, the District asserts that the City knew about the sales, as indicated by a letter from the City threatening legal action if the District served people outside its boundaries. But the District first introduced this letter when it sought a new trial. Nothing presented at trial suggested that the City knew about the outside sales until immediately before filing suit. Substantial evidence supports the district court's finding that the City did not knowingly waive its right to cancel the contract.

The District next argues that the district court shouldn't have denied its laches defense. We review the district court's denial of the doctrine of laches for abuse of discretion. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 388, 22 P.3d 124 (2001). Under

the doctrine of laches, when a party neglects to assert a right or claim for an unreasonable period of time and the delay prejudices or disadvantages the other party, courts will not grant relief. *Meneley*, 271 Kan. at 388-89; *Woodberry v. State*, 33 Kan. App. 2d 171, 175, 101 P.3d 727 (2004). A delay alone is not sufficient to allow a party to invoke the doctrine; the delay must disadvantage the other party. *State ex rel. SRS v. Cleland*, 42 Kan. App. 2d 482, 493, 213 P.3d 1091 (2009) (citing *Steele v. Guardianship & Conservatorship of Crist*, 251 Kan. 712, 725, 840 P.2d 1107 [1992]).

In this case, the district court rejected the District's laches defense because it found that the City promptly sought to cancel the contract once it discovered the outside sales and found that the District failed to show it was harmed or prejudiced by any delay. The District argues that it has a viable laches defense because the City had never complained about the matter and because cancelling the contract would harm the District. But the District didn't show how the City's *delay* disadvantaged it—in fact, continuing under the existing contract for an additional time period only benefitted the District, given the lower price it was paying for water under that agreement. We do not find that the district court abused its discretion in rejecting the defense.

The District next argues the district court erred in denying its statute-of-limitations defense. A statute of limitations requires that a person bring a legal claim against another person within a certain time period set by statute or else lose the right to sue regarding the claim. K.S.A. 60-511(1) provides that a cause of action for breach of a written contract must be filed within 5 years of the breach. We have unlimited review of the interpretation and application of a statute of limitations and thus owe no deference to the trial court's interpretation. *Schoenholz v. Hinzman*, 295 Kan. 786, 791, 289 P.3d 1155 (2012). The 5-year time limit for breach of contract begins to run when the alleged breach occurs, even if the party doesn't know the breach occurred. *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42 (1990).

20

In this case, the district court rejected the statute-of-limitations defense, noting that the District began serving six individuals outside its boundaries from 2011 to 2012, each a separate breach within the 5-year statute-of-limitations period. The court also characterized every sale to a customer outside the district boundaries as "an on-going and continuous breach." The court ultimately found that the City brought the suit within the applicable time frame of the breach. Though not entirely clear, the District seems to argue that if there was a breach, it occurred when the District initially served customers outside the boundaries and that the City failed to discover the breach within the required time period. It also disagrees that recently adding six more individuals could constitute a breach.

The contract between the City and the District is a continuing contract. See *Rupe v. Triton Oil & Gas Corp.*, 806 F. Supp. 1495, 1497, 1499 (D. Kan. 1992) (concerning contract to purchase gas for 20 years). A continuing contract is a contract that requires parties to continue to perform for some specified period of time, usually involving continuing payments. *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 174 F. Supp. 2d 1199, 1203 (D. Kan. 2001). A continuing contract may be partially breached, and each partial breach is a separate legal claim on which the parties can sue. *Neuromonitoring Associates v. Centura Health Corp.*, 2012 Colo. App. 136, ¶¶ 33-35, 351 P.3d 486, 492 (Colo. App. 2012) (citing 10 Corbin on Contracts § 956 [interim ed. 2007]). Here, the District breached the contract each time it added a new customer outside its boundaries. Because at least some of the breaches occurred within 5 years of the City bringing the lawsuit, the City brought its suit within the required time frame.

Finally, the District asserts that the district court should have accepted its equitable-estoppel defense. To assert equitable estoppel, a party must first show that another party—by its actions, words, or silence—caused the party to believe certain facts existed. *Petty v. City of El Dorado*, 270 Kan. 847, 853, 19 P.3d 167 (2001). The party must then show that it reasonably relied on those beliefs and would be harmed if the other

21

party were now allowed to deny the facts. 270 Kan. at 853. Because whether equitable estoppel applies is a discretionary matter, we review the district court's decision for abuse of discretion. *In re Estate of Pritchard*, 37 Kan. App. 2d 260, 279, 154 P.3d 24 (2007).

The District doesn't explain what actions the City took that misled it and should now prevent the City from cancelling the contract. In its brief, it only quotes from the holding in *Deutsche Bank Nat'l Trust Co. v. Sumner*, 44 Kan. App. 2d 851, 245 P.3d 1057 (2010), *rev. denied* 292 Kan. 964 (2011), and states the court must decide whether the City's actions prevent the City from taking advantage of its mistakes. The District's trial brief similarly quoted from the same passage without making an argument or applying it to the case. In rejecting the defense, the district court assumed that the District was referring to the City's silence and inaction regarding the outside sales. It held that the City did nothing because the District did not tell it about the outside sales; therefore, the District couldn't rely on the City's silence or inaction to mean that the City accepted the sales. The District has not shown any abuse of discretion in the district court's rejection of this defense. See *Coulter v. Anadarko Petroleum Corp.*, 296 Kan. 336, 351, 292 P.3d 289 (2013).

We affirm the district court's judgment.